1 jPETERS, Judge.
Terry John Bordelon and Ms wife, Geraldine Dauzat Bordelon, have brought these proceedings to adopt their minor niece, D.R.B. The natural father, Andrew Borde-lon, consents to the adoption, but the natural mother, Regina Renee Bordelon, objects. The trial court rendered an interlocutory decree of adoption of D.R.B. to the petitioners, and the natural mother has appealed, asserting two assignments of error: (1) the trial court erred in granting the adoption over her objection because she has maintained a significant relationsMp with the child, thus pro-Mbiting the granting of the adoption pursuant to La.Ch.Code art. 1194 and (2) the trial court erred in granting the adoption over her objection because the statutory elements required in the best interest of the child determination of La.Ch.Code art. 1194 were not met.
DISCUSSION OF RECORD
D.R.B. was born on September 30,1989, to Regina Renee Bordelon (Renee). Renee was not married at the time of D.R.B .’s birth, but Andrew Bordelon (Andrew) later acknowledged that he was the natural father of the child. Andrew and Renee |2were both using illegal drugs and drinking heavily before and after D.R.B.’s birth. It was as a result of her parents’ lifestyle that D.R.B. ended up in the care of the petitioners (Terry and Geraldine) for a significant portion of her first year of life. Renee was arrested on January 9, 1991, and charged with simple arson, simple burglary, and four counts of forgery. After conviction, she was given ten-year sentences at hard labor on each of these charges with the sentences to run concurrently. She had previously pleaded guilty to one count of forgery and been sentenced to serve two years at hard labor with such sentence being suspended and the defendant placed under supervisory probation. On March 5, 1991, Renee’s probation was revoked and her two-year sentence began to run concurrently with the other sentences.
When she was arrested in January of 1991, Renee placed D.R.B. in Terry and Geraldine’s care where the child has remained since. Renee was originally incarcerated in a state facility in Cottonport, Louisiana, wMeh is located in Avoyelles Parish, near where her minor daughter lives with Terry and *678 Geraldine. She remained in the Cottonport facility for approximately three years and then requested and received a transfer to a correctional facility in Bordelonville, Louisiana, which is also located in Avoyelles Parish, where she remained for approximately one year. Renee then requested and received a transfer to the correctional facility in St. Gabriel, Louisiana. The St. Gabriel facility is located in Iberville Parish, and Renee was still incarcerated there at the time of the hearing on the interlocutory decree. Renee testified that she would be eligible for parole in December 1995 or if parole were denied, then her good time date would be April 1996.
OPINION
This proceeding was brought pursuant to La.Ch.Code art. 1194 which allows |3an adoption to be granted over the objection of an incarcerated parent. La.Ch.Code art. 1194 provides in pertinent part as follows:
A Notwithstanding provisions of law to the contrary, an adoption may be granted over the objection of a parent or parents incarcerated in a state or federal penal institution, following conviction of a felony which has not been appealed, or which has been affirmed at least once on appeal, when all of the following exist:
(1) The nonincarcerated parent has executed an act of surrender for adoption of the child pursuant to Title XI; the nonin-carcerated parent is deceased; or the non-incarcerated parent’s rights have been terminated.
(2) The incarcerated parent has not developed or maintained a significant relationship with the child.
(3) The adoption is manifestly in the best interest of the child. In determining the best interest of a child, the court shall consider the following factors:
(a) The nature of the offense resulting in the incarceration of the parent, including all prior criminal activity.
(b) The length of the sentence imposed upon the parent, and the impact of such on the parent’s ability to provide a stable, permanent home for the child during the times in the child’s life when permanence and stability are important.
(c) Expert testimony concerning the fitness of the adoptive parent or parents and their relationship with the child, the child’s relationship with the incarcerated parent, the fitness of the incarcerated parent, and the needs of the child.
(d) Any relevant history of the incarcerated parent, including his or her relationship with the other parent, the child at issue or other children, any history of violence, substance abuse, sexual deviance, mental illness, or personality disorder.
(e) The physical, psychological, and emotional needs of the child, considering the child’s entire history and age.
The requirement of La.Ch.Code art. 1194(A)(1) has been satisfied as D.R.B.’s natural father appeared in court and executed an act of surrender for the adoption of the child. Thus, the assignments of error question only whether the requirements of La.Ch. Code art. 1194(A)(2) & (3) have been established.
MAINTENANCE OF SIGNIFICANT RELATIONSHIP WITH THE CHILD
A clinical psychologist, Dr. John C. Simoneaux, was appointed by the trial judge to conduct an evaluation in satisfaction of the requirements of La.Ch.Code art. 1194. The trial judge based his decision on Dr. Simo-neaux’s evaluations and on hisLown personal observations and findings developed during the course of the hearing. He stated the following in his reasons for judgment:
The supplemental opinion of Dr. Simo-neaux dated March 4, 1995 addresses specifically the question of whether the mother has developed or maintained a significant relationship with the child. It is Dr. Simoneaux’s opinion that she is not psychologically capable of maintaining a significant relationship with the child. My personal evaluation of Regina Renee Bordelon is totally consistent with that. As indicated above, I do not believe her testimony that she has changed or that she has genuine feelings for the child.
Appellant argues that Dr. Simoneaux used the wrong definition for “significant relation *679 ship” because in this context an incarcerated parent will have severe limitations on her ability to parent and cannot be expected to maintain a parent-child relationship identical to that outside of incarceration. We agree that the relationship between an incarcerated parent and child will be much different from an ordinary parent-child relationship. However, the incarcerated parent still must show that she has maintained a significant relationship with her child within the limitations of incarceration. Renee maintained contact with her child on a regular basis until she requested and received a transfer to the correctional facility in St. Gabriel. She asserts that she requested this transfer in order to have the opportunity to obtain her GED to improve herself so that she could support her child upon her release from prison. This very noble goal loses much of its impact when the record is clear that GED programs were also available at the correctional facilities in Cottonport and Bordelon-ville. Thus, it appears that Renee actually had nothing to gain by being transferred to St. Gabriel. At the same time, she was aware that the transfer could end her visitation opportunities with her child due to the increased travel distance.
An appellate court may not overturn a trial court judgment absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Stobart v. State, Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d [5840 (La.1989). Before an appellate court may reverse a fact finder’s determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong. Id. Even if we might have decided the case differently, this court should affirm the trial court’s determinations as to fact unless they are clearly wrong or manifestly erroneous. Id. Whether the mother has maintained a significant relationship with her child is a question of fact. When the trial court’s findings are based on determinations of the witnesses’ credibility, the manifest error standard requires great deference to those findings because only the fact finder can be aware of the variations in demeanor and voice that are so vital to the listener’s understanding and belief in what is being said. Rosell, 549 So.2d 840.
The trial judge considered the testimony of all the witnesses and the expert testimony of Dr. Simoneaux and concluded that not only had Renee not maintained a significant relationship with D.R.B. but also that she was incapable of maintaining a significant relationship with D.R.B. in the future. He stated that he doubted the mother’s love for the child and felt that the mother was using the child solely as a means to make amends for her past misconduct. The trial judge was in a better position to evaluate the parties’ credibilities, and we can find no error in his conclusion. Accordingly, we find no merit to this assignment of error.
BEST INTEREST OF THE CHILD
Finally, Renee argues that the trial court erred in finding that the requirements of La.Ch.Code art. 1194(A)(3) were met with regard to the best interest of the child. It is important to emphasize that the statute is specifically addressing the best interest of the child, not the best interest of the natural parent or the best interest of the prospective adoptive parents. It sets forth several factors to be utilized in determining | ¿what is in the best interest of the child.
The first factor involves the nature of the offense for which the parent is incarcerated and all prior criminal activity of the parent. Renee is presently incarcerated on convictions for forgery, simple arson, and simple burglary. Prior to this, Renee was convicted of one count of forgery.
The second factor involves the length of the parent’s prison sentence. In this case, Renee received a prison sentence of ten years with the possibility of parole. Renee’s incarceration began when D.R.B. was approximately one year old. Thus, Renee has been in prison for the majority of D.R.B.’s formative years and the majority of D.R.B.’s life. During these formative years, D.R.B. has been under the care and guidance of Terry and Geraldine.
Expert opinion concerning the fitness of the various parties is the focus of the third factor. Dr. Simoneaux evaluated all the rele *680 vant parties and performed an extensive battery of tests. In his recommendations, he stated:
The younger Ms. Bordelon [Renee] has not demonstrated any period of stability in her life. She has yet to take responsibility for any of her actions, her plans for when she gets out of prison are tenuous and ill-conceived, and the psychological testing suggests that she may have a difficult time changing her anti-social lifestyle. On the other hand, John [Terry] and Geraldine obviously love this child and have cared for her for many years. They exhibit no personality traits or problems that would prevent them from serving as effective parents to [D.R.B.], as they have for most of the child’s life.
There is no evidence to indicate that his conclusions concerning the parties are faulty.
The fourth factor involves the history of the incarcerated parent. Andrew testified that in the past, he and Renee both drank constantly, took Valium, and smoked marijuana even while Renee was pregnant with D.R.B. Thus, it is clear that from the very beginning Renee had a complete disregard for D.R.B.’s safety and welfare. After D.R.B. was born, this destructive lifestyle continued. There is nothing |7to indicate that Renee has reformed while in prison and will not return to her former lifestyle. To the contrary, Dr. Simoneaux concluded that she has not changed at all. A return to her former lifestyle would again place the minor child in danger.
The final factor involves the needs of the child. Although D.R.B. was only five years old at the time of the hearing, some weight should be given to her testimony. D.R.B. testified that she did not want to live with her mother when she is released from prison but rather wants to continue living with Terry and Geraldine. She stated that “Renee did not take care of me. Momma Geraldine did.” This is very compelling testimony. For essentially the entirety of her young life, she has only known one set of parents— Geraldine and Terry Bordelon. She knows that Andrew and Renee are her “real” parents, but Terry and Geraldine are the ones who have performed the roles of parents in her life. They are her psychological parents.
We find no error in the trial judge’s determination that the best interest of D.R.B. weighs heavily in favor of the requested adoption. It is not necessary for the prospective adoptive parents to prove each element under La.Ch.Code art. 1194(A)(3), but rather all the elements taken together are the factors for the court to consider in determining the best interests of the child. In re Rodrigue, 95-0009 (La.App. 1 Cir. 6/23/95); 657 So.2d 648, writ denied, 95-2141 (La.10/27/95); 662 So.2d 2; In re Adoption of S.R.P., 555 So.2d 612 (La.App. 4 Cir.1989), writ denied, 556 So.2d 1288 (La.1990). Thus, even if there are some considerations which are favorable to the incarcerated parent, if the combination of factors weighs heavily in favor of the adoptive parents, then the court should conclude that the adoption is in the best interest of the child. Id. While some considerations weigh in favor of Renee, the facts of this particular case convince us that the combination of factors are overwhelmingly in favor of the adoptive parents and that the adoption is in the best I ¿interest of D.R.B.
DISPOSITION
For the above reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.