# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-908


**STATE IN THE INTEREST OF**


**J.K.G. AND J.L.G.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2008-1286
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## PHYLLIS M. KEATY
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Oswald A. Decuir, James T. Genovese, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**724 Moss Street**
**Lake Charles, Louisiana 70601**
**(337) 436-2900**
**Counsel for Appellant:**
      **S.K.G. (father)**

**Michael Harson**
**District Attorney**
**Michelle Breaux**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, Louisiana 70502-3306**
**(337) 232-5170**
**Counsel for Appellee:**
      **State of Louisiana**

**Vivian Veron Neumann**
**Attorney at Law**
**405 West Convent Street**
**Lafayette, Louisiana 70501**
**(337) 232-7747**
**Counsel for Appellees:**
**J.K.G. (child)**
**J.L.G. (child)**

**Diane E. Cote**
**825 Kaliste Saloom Road**
**Brandwine I, Room 218**
**Lafayette, Louisiana 70508**
**(337) 262-5913**
**Counsel for Appellee:**
**State of Louisiana, Department of Social Services**

**Allyson M. Prejean**
**Attorney at Law**
**Post Office Box 3862**
**Lafayette, Louisiana 70502**
**(337) 291-9444**
**Counsel for Appellee:**
**V.M.G. (mother)**

**Lloyd Dangerfield**
**Attorney at Law**
**703 East University Avenue**
**Lafayette, Louisiana 70503**
**(337) 232-7041**
**Counsel for Appellant:**
**S.K.G. (father)**

**KEATY, Judge.**

In this involuntary termination of parental rights case, the trial court found that an incarcerated father of two minor children who were in the State's custody had been given numerous chances to work his case plan, visit with his children, and provide some amount of support for them and that, ultimately, the father chose not to take advantage of those opportunities. On the State's motion, and after a hearing, the trial court terminated the father's parental rights. The father appeals that judgment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 20, 2008, a caseworker discovered J.K.G. and J.L.G. asleep on the floor inside the front door of their mother's home, without blankets or clothing, even though it was cold outside. The mother was not home. The caseworker asked the mother's roommate where the children's clothes or diaper bags were and was told that they did not have any; they only had the diapers they were wearing and their clothing was soiled with urine. They had been left with the mother's roommate for over twenty-four hours without clean clothes, diapers, baby wipes, or ointment for diaper rash. The caseworker noticed that the older child had a diaper rash that rendered him nearly unable to walk. Both children had bruises and abrasions on their bodies, dirty fingernails and toenails, and smelled like urine.

An oral instanter order was obtained at 1:20 a.m. on November 21, 2008, and the children were taken into the State's custody. They were adjudicated children in need of care on January 27, 2009. The parents, S.K.G. and V.M.G., were served with that judgment to which a case plan seeking permanency through reunification was attached. The judgment also contained informative paragraphs explaining that a petition to terminate their parental rights could be filed if they

failed to comply with the requirements of the case plan. Counsel was appointed for each of the parents and for the minor children through the Fifteenth Judicial District Public Defender's Office. A review hearing was set for May 19, 2009.

The trial court ultimately conducted four review hearings, and, during that time, the case plan changed from reunification to freeing the children for adoption, as neither parent had made significant efforts at working their plans. On November 29, 2010, the State filed a petition for termination of parental rights and certification for adoption, alleging that it would be in the best interest of the minor children to terminate their parents' parental rights pursuant to La.Ch.Code art. 1015(4), (5), and (6).

The termination hearing began on February 15, 2011. At that time, the caseworker indicated that the mother had taken some steps toward completing her case plan and that she wanted to reunify with her children. The mother was not present at the hearing because she had transportation problems that morning. The trial court recessed the hearing until May 3, 2011, because the mother had made efforts at working her case plan and was only absent because of transportation issues.

The father, S.K.G., was present at the May 3, 2011 hearing. At the May 3 hearing, the caseworker testified that the mother no longer wanted to reunify with her children and had expressed a desire to surrender her parental rights, but had not completed that process. The mother's attorney indicated that her client, who was not present at the hearing, wanted her parental rights to the minor children terminated. S.K.G.'s attorney argued that S.K.G. wanted his children and was shocked because he thought the mom was going to work her case plan to keep custody of the children.

The caseworker testified that S.K.G. was incarcerated, and although he had indicated to her that he would be released at the end of December 2011, his probation officer indicated that he was sentenced to serve three years beginning on August 16, 2010. She further testified that S.K.G. had been issued a case plan requiring him to maintain housing and employment and participate in a substance abuse treatment program and a parenting program. During the two and one-half years that the children were in the State's custody, S.K.G. had not maintained stable housing, as he had been incarcerated for the majority of that time. She testified that even when S.K.G. was released from jail, he "did not participate or complete any of the components of his case plan" and "[h]e did not contact the agency to work any component or receive assistance to his case plan component." Although he was in a work release program at the time of the hearing, he had not paid parental contributions to the children and had only visited with the children twice during the pendency of the case: once in November 2009 and once before the May 3 hearing. He did not make any attempts to visit with the children during the time periods that he was out of jail.

When he was presented with a TPR-2, indicating that the agency was moving towards termination, S.K.G. provided the agency with the names of two potential placements, his mother and his sister, but neither returned the agency's calls concerning the children. The caseworker testified that she told S.K.G. that neither his mother nor his sister returned her calls after a February 15, 2011 hearing, and he did not provide her with the names of any other potential placements. She testified that S.K.G. indicated that he could not work his case plan while in jail but that he planned to begin working it once he was released. She further testified that the children ran up and hugged their father when they saw him before the May 3 hearing.

3

Finally, the caseworker indicated that the children's foster parent, who is also an adoptive placement, was open to "continued contact according to the agency's guidelines" between the children and their biological parents.

The trial court decided to terminate S.K.G. and V.M.G.'s parental rights. In its oral reasons for ruling, the trial court stated:

> And with regards to the dad, I mean, I think these children are also entitled to have resolution in their life; and this has been going on for many years now. The father has had opportunities on several occasions to become involved in their life, to do visits, to work a case plan. He has chosen not to do so; and based on that, the Court is going to terminate his parental rights at this time.

On May 24, 2011, the trial court signed a judgment that terminated the parental rights of the minor children's parents, S.K.G. and V.M.G., finding that they failed to substantially comply with their case plan for services, failed to provide significant contributions to their children's care and support for a consecutive six-month period, that there was no reasonable expectation of significant improvement in the parents' condition or conduct in the near future, and that termination of the parents' parental rights is in the best interest of the minor children.

S.K.G. appeals, asserting two assignments of error for our review: 1) the trial court erred in finding that the State proved, by clear and convincing evidence, that S.K.G. was able to comply with the case plan but voluntarily had not done so, and that his incarceration would prohibit him from caring for the minor children for an extended period of time, and 2) the trial court erred in determining that the termination was in the best interest of the minor children.

4

**STANDARD OF REVIEW**

A trial court's findings on whether or not parental rights should be terminated are subject to the manifest error standard of review. *State ex rel. K.G.,* 02-2886 (La. 3/18/03), 841 So.2d 759.

**DISCUSSION**

The Supreme Court has stated that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394. This liberty interest is "perhaps the oldest of the fundamental liberty interests." *State ex rel. SNW v. Mitchell*, 01-2128, p. 8 (La. 11/28/01), 800 So.2d 809, 814 (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060).

In termination proceedings, that fundamental interest must be balanced with the interest of the child, and "courts of this state have consistently found the interest of the child to be paramount over that of the parent." *State ex rel. J.M.*, 02-2089, p. 8 (La. 1/28/03), 837 So.2d 1247, 1252. Often at odds with those of its parents, the child's interest is "in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care." *Id*. When determining whether a parent's rights should be involuntarily terminated, the trial court must exercise "great care and caution . . . because the permanent termination of the legal relationship existing between children and their biological parents is one of the most severe and drastic actions the State can take against its citizens." *Id*.

Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights. Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best

interest of the child in order to meet the statutory requirement of La.Ch.Code art. 1035(A), which requires that grounds for termination be proven by clear and convincing evidence. *State ex rel. M.H. v. K.W.H.*, 40,332 (La.App. 2 Cir. 9/23/05), 912 So.2d 88.

In the instant case, the State sought termination of S.K.G.'s and V.M.G.'s parental rights based on La.Ch.Code art. 1015(3), (5), and (6), and the trial court granted it based on Article 1015(5), which states:

> Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In his first assignment of error, S.K.G. argues that the trial court erred in finding that the State proved, by clear and convincing evidence, that S.K.G. was able to comply with the case plan but voluntarily had not done so and that his incarceration would prohibit him from caring for the minor children for an extended period of time. "A lack of parental compliance may be shown with proof of either failure to visit the child, to communicate with the child, failure to contribute to the cost of the child's foster care or failure to comply with the required treatment and rehabilitation services." *State ex rel. M.H.*, 912 So.2d at 94. The caseworker testified that S.K.G. visited his children only twice while they were in the State's custody, had not complied with substance abuse classes or parenting classes, and had not contributed financially to the support of his children while they were in the State's care, despite the fact that he was not incarcerated for the entire duration, and, at the time of the termination hearing, he was enrolled in a work release program.

6

S.K.G. was given an opportunity to present evidence of "just cause" for his failure to provide for his children's care and support, but did not do so. "'[J]ust cause' is an affirmative defense which allows a parent, after the state has proved abandonment for failure to provide for the children's care and support, to prevent termination by proving that the failure was with just cause and excusable." *Id.* at 92, (citing *State in the Interest of M.L.*, 95-45 (La. 9/5/95), 660 So.2d 830). "Incarceration is not a just cause defense to failure to support children or maintain contact with them in a termination of parental rights case if the parent is incarcerated as a result of his own actions." *Id.* (citing *State in the Interest of J.T.C.*, 04-1096 (La.App. 5 Cir. 2/15/05), 895 So.2d 607).

The record demonstrates that S.K.G. was presented with his case plan, yet failed to visit with his children, provide any sort of financial support for them, or take classes related to his case plan that were available at the correctional facilities. Although he told the caseworker that he planned to work his case plan once he was released from jail, the record supports the conclusion that S.K.G. failed to work any component of his case plan and, indeed, failed to contact his children even when he was not incarcerated. S.K.G. failed to present a scintilla of evidence of "just cause" which would potentially excuse his behavior or lack thereof.

Accordingly, we find that the trial court was not manifestly erroneous in finding that S.K.G. chose not to comply with his case plan. This assignment lacks merit.

In his second assignment of error, S.K.G. complains that the trial court erred in finding that the termination was in the best interest of the children. The record supports the conclusion that S.K.G. did not comply with his case plan. Further, the record reflects that the children are currently living with a foster parent who wishes to adopt them and who is willing to allow a continuing relationship between the

children and their biological parents. "Before an appellate court may reverse a fact finder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong." *In re Bordelon*, 95-1194 (La.App. 3 Cir. 3/6/96), 670 So.2d 676, 679. After carefully reviewing the record, we determine that the trial court was not manifestly erroneous in finding that the termination of parental rights was in the best interest of the children. Accordingly, this assignment lacks error.

## CONCLUSION

For the foregoing reasons, we find that the trial court was not manifestly erroneous in terminating the parental rights of S.K.G., and we affirm the judgment of the trial court.

**AFFIRMED.**