# NOT FOR PUBLICATION

**16-90**

**STATE IN THE INTEREST OF J.S.**

**\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**FIFTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF LAFAYETTE, DOCKET NO. JC-2013539**
**HONORABLE THOMAS R. DUPLANTIER, PRESIDING**
**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.**

Lloyd Dangerfield
Public Defenders Office
600 Jefferson Street, Suite 902
Lafayette, LA 70502
(337) 232-7041
**ATTORNEY FOR APPELLANT**
  M.M.


L. Antoinette Beard
825 Kaliste Saloom Road
Brandywine 3, Room 150
Lafayette, LA 70508
(337) 262-1555
**ATTORNEY FOR APPELLEE**
  State of Louisiana, Department of Children and Family Services

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

The minor child, J.S., born September 2, 2005, and his half-brother, L.J., became involved with the Department of Children and Family Services (DCFS) beginning in July of 2012. At issue was the mother's alleged drug use and inability to care for the children. Pursuant to an Instantur Order, J.S. was placed in the custody of DCFS on May 6, 2013 because of the mother's continued drug use and resultant neglect of J.S. The child was adjudicated a Child in Need of Care on August 20, 2013.

The father of J.S., M.M., tested positive for opiates during the initial investigation and was not available at the time of the removal. Although he exercised his visitation privileges with J.S., M.M. did not have adequate housing to accommodate his son at the time of the removal. There were no allegations against the father at that time.

An initial case plan for M.M. was established. It required him to obtain and maintain housing, obtain and maintain income, submit to random drug tests, take a parenting course, continue regular visitation with J.S. and pay his monthly parental obligations. M.M. acknowledged he was "slow getting out of the gate" in working his case plan, as he was planning to move from Lafayette to Florida. He stated he was doing so for better employment opportunities. He moved to Florida in December of 2013. During that period, on December 19, 2013, the mother, M.L.S., surrendered her parental rights.

In February of 2014, at a review hearing, M.M. informed his attorney and DCFS that his move to Florida was for better employment opportunities. It does appear he returned to Lafayette for a few months shortly thereafter. It was later explained that he and his girlfriend had broken up during this time. Although DCFS employees expressed difficulty in reaching M.M. on several occasions, he

2

did express a desire to work his case plan and to pursue custody of his son.

Upon determining that M.M. was not in compliance with his case plan and noting the child had bonded and attached to his foster parents, who desired to adopt him, DCFS filed a "Petition for Termination of Parental Rights and Certification for Adoption." DCFS alleged as grounds for termination of M.M.'s parental rights Louisiana Children's Code Article 1015(4)(b) (failure to provide significant contributions to the child's support for six consecutive months), 1015(4)(c) (failure to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months), and 1015(5) (no substantial compliance with a case plan and no reasonable expectation of significant improvement in the parent's conduct).

The trial court found M.M. did not substantially comply with his case plan and there was no reasonable expectation of significant improvement in M.M.'s conduct in the foreseeable future. The trial court specifically noted it found M.M.'s testimony regarding his compliance with his case plan to be unconvincing. The trial court further noted M.M. left the state without complying with a court-ordered drug test. M.M. also failed to comply with several components of his case plan, including failure to submit to substance abuse assessment, proof of employment, proof of child support payments, proof of acceptable parenting classes and adequate housing. Most importantly, the trial court was greatly disturbed by M.M.'s failure to visit his son, stating as follows:

> I find your lack of contact with your child to be of great concern. You made phone visits once per month since March; in March, maybe two (2) or three (3) times. Once since then. Prior to that time, none. I'm not – I cannot believe that, during the three (3) years of this case, that you have not – could not have made an effort to visit with your child during that time. I'm not suggesting you don't love your son, that you wouldn't want to be in your son's life, but what I see is inconsistency and failure to work a case plan.

The trial court rendered judgment terminating M.M.'s parental rights. In its

"Judgment of Termination of Parental Rights and Certification for Adoption" the trial court set forth its reasons for ordering termination. It specifically found M.M. failed to substantially comply with his case plan, there was no reasonable expectation of improvement in the near future, there was a failure to provide support for or visit with his minor child as ordered by the court when approving the case plan, and that termination and certification for adoption were in the best interests of the child, as the child has been in foster care for greater than 24 months and is in an adoptive resource home.

M.M. has appealed the trial court's judgment, arguing the trial court erred in finding he was not in substantial compliance with his case plan.

## ANALYSIS

A trial court's findings on whether parental rights should be terminated are subject to the manifest error standard of review. *State ex rel. K.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759. Moreover, whether a parent has complied with a case plan, the expected success of rehabilitation, and the expectation of significant improvement in the parent's condition or conduct are all questions of fact that may not be set aside in the absence of manifest error or unless clearly wrong. *State in Interest of O.L.R.*, 13-616 (La.App. 3 Cir. 11/6/13), 125 So.3d 569.

M.M. argues the trial court erred in terminating his parental rights under La.Ch.Code art. 1015(5) because DCFS did not prove its case by clear and convincing evidence. While parents have a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with their children, the State has a legitimate interest in limiting or terminating parental rights under certain conditions. *State in the Interest of A.C.*, 93-1125 (La.1/27/94), 643 So.2d 719, *cert. denied*, 515 U.S. 1128, 115 S.Ct. 2291. To terminate parental rights, one of the grounds for termination set forth in La.Ch.Code art. 1015 must be established by clear and convincing evidence, and termination must be found to be

4

in the child's best interest. *State ex rel. D.L.R.*, 08-1541 (La.12/12/08), 998 So.2d 681.

The trial court found termination was warranted based on the grounds set forth in La.Ch.Code art. 1015(5), which provides as follows:

> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Lack of parental compliance with a case plan may be evidenced by one of the following factors: (1) failure to attend court-approved scheduled visitations; (2) failure to communicate with the child; (3) failure to keep DCFS apprised of his whereabouts and significant changes affecting his ability to comply with the case plan; (4) failure to contribute to the costs of the child's foster care, if ordered by the court when approving the case plan; (5) failure to comply with the required program of treatment and rehabilitation services provided in the case plan; (6) lack of substantial improvement in redressing the problems preventing reunification; or (7) persistence of conditions that led to removal or similar potentially harmful conditions. La.Ch.Code art. 1036(C). Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best interest of the child in order to meet the statutory requirement of La.Ch.Code art. 1035(A), which requires that grounds for termination be proven by clear and convincing evidence. *State in Interest of J.K.G.*, 11-908 (La.App. 3 Cir. 9/23/05), 118 So.3d 10.

Our review of the record shows the trial court did not manifestly err in finding DCFS proved M.M. failed to substantially comply with his case plan. M.M.'s case plan consisted of the following components: Housing; parenting;

5

income; substance abuse assessment; submit to random drug screens; visitation with child and with the agency; advise the agency of changes; and make parental contributions of $25 per month.

**Housing**. Prior to moving to Florida in December of 2013, M.M. failed to provide DCFS with accurate information concerning his living arrangements. Efforts to locate him were unproductive, and the case worker testified M.M. explained his reluctance to provide accurate information as to where he was living or the fact he had outstanding warrants for his arrest. In December 2013, M.M. did advise DCFS he was moving to Florida and was residing with his girlfriend. However, at a court hearing in February of 2014, he stated he and his girlfriend had broken up and he was back in Lafayette living at a previously reported address on Moss Street. At the time of the termination hearing, M.M. was back in Florida living with his girlfriend in a house she owned. The trial court ordered an Interstate Compact Placement of Children (ICPC) in late 2014, and submitted to the State of Florida a request for a home study for the residence in question. M.M. notes there were no problems detected by the Florida worker who visited the home. However, it was uncontradicted that the home in question was owned by M.M.'s girlfriend, thus M.M. was unable to provide verification of independent housing.

**Substance Abuse**. The record established M.M. tested positive for opiates when DCFS first became involved with his son. This initial drug screen is the only random screen obtained from M.M. during the entire duration of this case, despite several requests from DCFS to obtain additional screens. In M.M.'s second court appearance on July 29, 2014, the trial court ordered M.M. to submit to a drug screen before leaving the court house. M.M. did not comply with the judge's order, instead waiting two months before sending in results of a drug screen performed in Florida. Thus, it is apparent M.M. has not complied with substance abuse assessment as required by his case plan. M.M. attempted to justify his

6

refusal to submit to required drug screens by explaining that he was waiting for DCFS to approve payment for the drug screens. M.M. did not explain why he did not raise the payment question during or shortly after the hearing. He simply disobeyed the court order by failing to submit to a drug screen on July 29, 2014.

**Parental Contribution.** M.M. was required by his case plan to make a parental contribution of $25.00 per month. DCFS employees testified M.M. failed to make these payments. M.M. asserted he made these payments and attempted to introduce a computer generated printout in support of that assertion. The trial court sustained an objection to its admission, noting the printout "is nothing. [It] doesn't have anybody's name on it." The DCSF case worker who worked M.M.'s case plan also testified he owed $17,000.00 in child support arrearages.

**Visitation.** Because M.M. was primarily living in Florida during this period, telephone visits were allowed at any time according to the case plan. The child's maternal aunt, with whom the child resided, testified M.M. was allowed to call at any time to talk to his son. M.M. disputed this, and stated his attempts to call were hindered by the maternal aunt.

It was not disputed by M.M. that he visited his son in person only *once* since the child entered foster care in May of 2013. That visit, which lasted approximately ninety minutes, occurred on July 28, 2014, the day before the Permanency and Case Review Hearing was held. M.M. sought to explain this by noting he lived in Florida for a great deal of this time. However, it was established in the record that M.M. had spent time in Louisiana during this time period, including the period when he "broke up" with his girlfriend. Yet, he did not seek to spend time with his son.

A review of the record supports the trial court's determination that M.M. did not demonstrate substantial compliance with his case plan. In the nearly three years since the child came into the care of DCFS, M.M. has made little to no

progress in completing his case plan. Of even greater concern, his extreme lack of visitation with his child demonstrates a lack of interest in parenting his child.

The Louisiana Supreme Court in *State in Interest of S.M.*, 98-922 (La. 10/20/98), 719 So.2d 445, 452 (citations omitted), addressed the balancing act between protecting both parental rights and the best interest of the child:

> More than simply protecting parental rights, our judicial system is required to protect the children's rights to thrive and survive. Furthermore, a child has an interest in the termination of rights that prevent adoption and inhibit that child's establishment of secure, stable, long term, continuous family relationships. While the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to insure that parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount best interest of the children.

The record established the child had bonded and attached to his foster parents, who are his maternal relatives, and with whom he has lived with since May of 2013. The child lives in the home with his half-brother, who has also been adopted by the foster parents. We cannot say the trial court erred in finding it is not in the best interests of the child to prolong his stay in the foster care system while continuing to wait for some genuine and lasting sign that his father possesses the will and devotion to fulfill his parental obligations.

**DECREE**

For the foregoing reasons, the judgment of the trial court terminating the parental rights of M.M. is affirmed.

**AFFIRMED.**