## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 17-15


## STATE IN THE INTEREST OF T.M.B. & T.T.B.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2014-511
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.


**AFFIRMED.**



**Lloyd Dangerfield**
**703 E. University Avenue**
**Lafayette, LA   70503**
**(337) 232-7041**
**COUNSEL FOR APPELLANT:**
    **T.G. (father)**

**L. Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine Building 3, Room 150**
**Lafayette, LA   70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of**
    **Children & Family Services**

**Nicole M. Guidry**
**100 S. Louisiana Street, Suite 500**
**Abbeville, LA   70510**
**(337) 740-8885**
**COUNSEL FOR APPELLANT:**
    **E.L.B. (mother)**

**Franchesca L. Hamilton-Acker**
**Acadiana Legal Service Corp.**
**P. O. Box 4823**
**Lafayette, LA 70502-4823**
**(337) 237-4320**
**COUNSEL FOR APPELLEES:**
    **T.M.B. (child)**
    **T.T.B. (child)**

**Tracy Davenport-McGraw**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, LA   70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**AMY, Judge.**

The two minor children came into the custody of the State due to allegations of their parents' drug use. Citing a lack of substantial compliance with the case plan, the State filed a petition to terminate parental rights. Following a trial, the trial court terminated the parental rights of both parents and certified the children eligible for adoption. The father appeals. For the following reasons, we affirm.

### Factual and Procedural Background

According to the record, T.M.B. and T.T.B.[1] were one year old and four months old, respectively, when they were placed into the State's custody on June 23, 2014.[2] The Department of Children and Family Services (DCFS) became involved with the family in February 2014, after receiving a report that E.B., the children's mother, tested positive for cocaine while in labor with T.T.B. During the ensuing investigation, the children's father, T.G., admitted to using marijuana.

Before the children were removed from their parents' custody, DCFS developed a safety plan for the family, which required E.B. and T.G. to attend substance abuse programs and submit to random drug screenings. However, according to the State's Affidavit in Support of Instanter Order, E.B. and T.G. continued to test positive for illicit drugs. In August 2014, T.M.B. and T.T.B. were adjudicated children in need of care and were placed with a foster parent. While the State's initial primary goal was reunification of the children with their

---

[1] The initials of the children and their parents are used herein pursuant to Uniform Rules—Courts of Appeal, Rule 5-2. *See also* Uniform Rules—Courts of Appeal, Rule 5-1.

[2] The children's two older half-siblings were also placed into the State's custody at this time. However, E.B. stipulated to a transfer of legal custody and guardianship as to those children, which is not subject to this appeal.

parents, it later converted its primary goal to adoption, which was approved by the trial court in November 2015.

On April 21, 2016, the State filed a petition seeking to terminate E.B. and T.G.'s parental rights and to certify the children eligible for adoption. In its petition, the State alleged that E.B. and T.G. abandoned their children pursuant to La.Ch.Code art. 1015(4),[3] as they "failed to provide significant contributions to their children's care and support for a period of six consecutive months." The State further alleged that T.G. "failed to maintain significant contact with [his] minor children by failing to visit or communicate with said children for a period of six consecutive months[.]" Additionally, the State alleged that termination of parental rights was justified pursuant to La.Ch.Code art. 1015(5),[4] as "greater than

_____

[3] Louisiana Children's Code Article 1015 was subsequently revised by 2016 La. Acts No. 608, § 1, which left La.Ch.Code art. 1015(4) substantively the same but re-designated it as La.Ch.Code art. 1015(5). At the time the petition was filed, La.Ch.Code art. 1015(4) provided the following, in pertinent part:

> The grounds for termination of parental rights are:
>
> . . . .
>
> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

[4] Re-designated by 2016 La. Acts No. 608, § 1 as Paragraph 6, La.Ch.Code art. 1015(5) provided the following, in pertinent part, at the time the petition was filed:

> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services

2

one year has elapsed since the children were removed from the parents' custody pursuant to a court order, there has been no substantial parental compliance with the case plan[,]" and "there is no reasonable expectation of significant improvement in the parents' condition or conduct in the near future, considering the children's ages and need for a safe, stable, and permanent home[.]"

After a trial, the trial court took the matter under advisement. On October 19, 2016, the trial court rendered a judgment, with written reasons for ruling, terminating the parental rights of E.B. and T.G. and freeing T.M.B. and T.T.B. for adoption.

T.G. appeals,[5] assigning as error that:

1.   The trial court erred in terminating the rights of T.G. for substantial non-compliance when he was complying with the case plan.

2.   The trial court erred in terminating the rights of T.G. where D.C.F.S. failed to prove by clear and convincing evidence there was no reasonable expectation of significant improvement in the parent's condition or conduct.

3.   The trial court erred in terminating the rights of T.G. where D.C.F.S. failed to demonstrate that termination was in the best interest of the children.

(Upper case font removed.)

---

which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

[5] E.B. also filed an appeal with this court. However, the State filed a motion to dismiss her appeal as untimely, which was granted by a panel of this court in a February 15, 2017 ruling. *See State in the Interest of T.M.B. & T.T.B.*, 17-15 (La.App. 3 Cir. 2/15/17) (unpublished opinion), *writ denied*, 17-0477 (La. 4/7/17), __ So.3d __.

**Discussion**

*Substantial Compliance*

In his first assignment of error, T.G. asserts that the trial court erred in determining that he failed to substantially comply with his case plan, such that termination of his parental rights pursuant to La.Ch.Code art. 1015(5) was unwarranted. T.G.'s case plan, which substantially remained the same throughout these proceedings, required him to: 1) maintain adequate housing and income, 2) provide contributions of $25.00 per month toward the care and support of the children, 3) complete substance abuse treatment while submitting to random drug screens, 4) attend parenting classes, and 5) attend weekly visits with the children.

T.G. argues that he "substantially complied with each component of the case plan except for completing the parenting class and making monthly contributions." Regarding the parenting class component, he argues that he was "appropriate" with the children during their visits and that "[b]ased on the case managers['] observations of T.G. during the visits, there appears to be no real need for the parenting class other than to try to improve upon what is already appropriate." Additionally, regarding the monthly contributions component, T.G. appears to argue that he could not afford to make contributions, stating that he "maintained the expenses of the household where he and E.B. lived" and that "[i]t is understandable that an individual without a driver's license and without a vehicle would be hindered in seeking and maintaining gainful employment[.]"

According to La.Ch.Code art. 1035(A), "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." Moreover, "the State need only establish one ground for termination[.]" *State in the Interest of J.K.G.*, 11-908, p. 5 (La.App. 3 Cir.

4

1/11/12), 118 So.3d 10, 14. This principle is particularly pertinent to the defendant's concession that he failed to substantially comply with the case plan in two respects. Additionally, La.Ch.Code art. 1036(C) provides the following:

Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

A trial court's decision to terminate parental rights is subject to the manifest error standard of review. *J.K.G.*, 118 So.3d 10.

DCFS case managers assigned to this case throughout these proceedings testified at trial. Megan Callais Anthony, who was the case manager from June 2014 through December 2014, testified that during that time period, T.G. never paid parental contributions, never provided verification of employment or income, failed to attend substance abuse treatment, only submitted to one drug screen, and "visited with the children sporadically, it wasn't on a consistent basis." She further testified that T.G. cited his employment as the cause of his lack of visitation and

5

that, despite DCFS's attempts to accommodate T.G.'s work schedule, he "made no effort to accommodate or work with" DCFS in this regard. When asked at trial if she felt "that the parents made any progress with their case plan" during this time period, she replied, "No, ma'am."

Shanta Daney, who was the case manager from January 2015 through August 2015, testified that during that time period, T.G. never provided parental contributions; that she did not remember him providing verification of employment or income but knew that he was working at an air conditioning company because she spoke to his brother, who owned the company; that he completed a substance abuse program but was often unavailable for drug screens, citing his employment as the cause of his unavailability; and that he attended weekly scheduled visitations "about once a month."

The third case manager, Markayla Robertson, was assigned to the case from August 2015 through the time of trial. She testified that during this time period, and until February 2016, T.G. and E.B. lived with relatives in homes that lacked adequate space for the children. At the time of trial, however, they lived in a home that she described as "doable." She further testified that while she was the case manager, T.G. never paid parental contributions, did not consistently provide verification of employment but provided proof of unemployment compensation in June 2016, failed to complete substance abuse treatment,[6] "didn't complete many" of the random drug screens, and failed to attend parenting classes. When asked at trial if T.G. "really completed any portion of his case plan[,]" she replied, "No."

---

[6] While T.G. completed an earlier substance abuse program at the Lafayette Addictive Disorders Clinic, a DCFS case plan review dated October 28, 2015 reveals that he was referred to another program at the clinic, in which he "refused to participate[.]"

Furthermore, a report dated May 2, 2016 from DCFS to the trial court states the following:

> [T.G.]'s case plan consists of housing, employment, substance abuse treatment, and parenting.
>
> [T.G.] resides with [E.B.] . . . [.] [T.G.] indicated that he works a lot and it is very hard for him to get off. [T.G.] is employed at [an air conditioning company]. [T.G.] has not been working with [the air conditioning company]. When asked about this, he stated the company was slow during the winter months. Because of this, [T.G.] will collect unemployment. Since then, the weather has warmed up. [T.G.] still has not returned to the air conditioning company. He tells the agency that he is working "odd jobs". As before, [T.G.] has failed to avail himself to the agency since March 2016. He is still stating that this is because of his demanding work scheduled [sic].
>
> Prior to March 2016, [T.G.] was always available to the agency representative. This has changed, drastically decreasing contact between him and the agency. [T.G.] has also stopped visiting with the children. His last visit with the children was on March 9, 2016.
>
> The agency referred [T.G.] to substance abuse services at the Lafayette Addictive Disorder Clinic. He did not comply with this aspect of his case plan.
>
> The agency referred [T.G.] to the Nurturing Parenting Program through the Extra Mile; however he did not attend the classes. He stated that this is because of his work schedule; this is of concern as [T.G.] is collecting unemployment benefits and cannot verify his work schedule.
>
> . . . .
>
> [T.G] has not been present for most visits[;] when present[,] he makes effort [sic] to engage the younger two children.

In its written reasons for ruling, the trial court stated the following:

> Throughout the case plan, both the mother and the father struggled to acquire adequate housing. They lived with various relatives at various locations until February 2016, when they finally acquired an independent home for themselves. The worker testified that the two bedroom, one bath home would be suitable for the family, however, it was very small.
>
> . . . .

7

With regards to the father, he has been employed throughout the case plan with [air conditioning company], but failed to provide verification of this employment. He failed to meet his obligation to provide parental contributions for his children. He has failed to comply with random drug screens and failed to complete parenting classes due to his work schedule and lack of transportation and lack of a driver's license. However, the father denies that he has a substance abuse problem and all of the screens that he did complete were clean.

This case involves a drug-addicted mother who struggles with mental illness and has failed to comply with the case plan, but wants to regain custody of two very young children. She is an addict and has lost guardianship over her two older children due to her continuous failure to display a pattern of sobriety. Likewise, the father in this matter has been non-compliant with his case plan.

After reviewing the record, we find no manifest error in the trial court's determination that T.G. failed to substantially comply with his case plan. The trial testimony of each of the case managers, as well as the numerous DCFS reports filed with the trial court over the course of these proceedings, demonstrate a lack of substantial compliance.

T.G. suggests that the State failed to meet its burden of proof with regard to housing, employment, drug screens, and substance abuse treatment. Notwithstanding the evidence as to each of those components of the case plan, addressed above, T.G. concedes that he failed to comply with two components of the case plan, i.e. the requirement that he make contributions to the children's care and the completion of parenting classes. The trial court's ruling as to the grounds for termination is supported by these omissions alone. T.G.'s failure to provide contributions to the children's care was proven by testimony from each of the case managers, in addition to his admission in this regard. *See also* La.Ch.Code art. 1015(4)(b) (providing that failure to make contributions to the children's care and support for six consecutive months is a ground alone to terminate parental rights).

8

Moreover, we find no basis in T.G.'s assertion that there was "no real need" for him to attend parenting classes. Rather, Ms. Robertson testified at trial that DCFS "wanted both parents to improve their protective capacities." While she conceded that T.G. did "engage in activities with the children . . . whenever he was able to visit[,]" she further explained that "as far as, like, the actual parenting and disciplining the children, he didn't -- he didn't do much of that." Again, T.G. explains to the court that he failed to complete the classes as required.

For these reasons, we find that this assignment of error lacks merit.

*Reasonable Expectation of Significant Improvement*

In his second assignment of error, T.G. asserts that the State failed to prove, by clear and convincing evidence, that there was no reasonable expectation of significant improvement in his conduct in the near future, as required by La.Ch.Code art. 1015(5). Specifically, T.G. argues that at trial, "[t]here was no expert testimony introduced to express an opinion regarding reasonable expectations of the parents to significantly improve or not in the near future. Nor was there an attempt to introduce lay testimony to express an opinion on reasonable future expectations." He also maintains that he and E.B. "have been consistent in their efforts, even if sometimes falling short, and consistent in their determination to regain custody and such determination alone makes improvement a reasonable expectation." Contrarily, the State suggests that although T.G. had over two years to complete his case plan before trial, he "consistently avoided contact with the agency and failed to work the components of the case plan[,]" and his "conduct and behavior would seem to demonstrate a lack of true interest in parenting his children."

A lack of reasonable expectation of significant improvement in a parent's conduct in the near future may be evidenced by any "condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior." La.Ch.Code art. 1036(D)(3). Additionally, "[m]ere cooperation with DCFS is inadequate; the parents must show improvement over time, even if all of the problems that caused the removal have not been eliminated." *State in the Interest of G.E.K. & C.E.S.*, 14-681, p. 15 (La.App. 3 Cir. 1/14/15), 155 So.3d 713, 723. Moreover, the parents must "significantly modify the behavior that caused the removal." *Id.*

In its written reasons for ruling, the trial court stated that T.G. "has demonstrated a lack of conviction in working his case plan in order to regain custody of his children." After reviewing the record, we find no manifest error in the trial court's conclusion that there was no reasonable expectation of significant improvement in T.G.'s conduct in the near future. Neither do we find merit in T.G.'s suggestion that the State's evidence was insufficient due to a lack of expert testimony, as La.Ch.Code art. 1036(D)(3) states that evidence may be "based upon expert opinion *or* based upon an established pattern of behavior." (Emphasis added).

While T.G. asserts that he was "consistent" in his efforts to regain custody of the children, the record supports the trial court's ruling in this regard. Notably, when Ms. Robertson was asked at trial whether she felt the parents had been cooperative with DCFS's efforts, she replied, "No, ma'am. . . . It's a lot of inconsistency. They will cooperate and then they won't. The parents are just pretty much unstable and haven't completed -- they haven't successfully

10

completed any aspect of the case plan." That inconsistency is reflected in, among other things, T.G.'s failure to submit to random drug screens and to attend scheduled weekly visits with the children. Accordingly, we do not find manifest error in the determination that T.G. has not shown improvement over time and has not significantly modified the behavior that led to the children's removal.

Finally, T.G. argues that he "demonstrated a significant improvement within one month following" the trial, as a report from DCFS to the trial court dated November 10, 2016 "indicated that the father, T.G., had begun parenting classes, had paid two parental contributions totaling $70.00, and had a negative drug screen on November 2, 2016." However, as the State points out, these are "not facts in evidence and, if true, were not available to the [t]rial [c]ourt when making its decision."

Accordingly, we find that this assignment of error lacks merit.

*Best Interests of the Children*

In his final assignment of error, T.G. argues that the State failed to prove that termination of his parental rights was in the best interests of the children. A trial court may terminate parental rights only if finds that termination is in the best interests of the child. *See* La.Ch.Code art. 1037(B). *See State in the Interest of D.H.L.*, 08-39, (La.App. 3 Cir. 4/30/08), 981 So.2d 906.

T.G. argues that the children "have a bond with their parents and know them as their parents[,]" and that the children's foster parent "has fostered a relationship with the children such that they know their parents as 'Mother' and 'Father'." However, the State argues that the children "are bonded and attached to their foster parent[,]" that the "children recognize that [their foster parent] is the person raising

11

them[,]" and that their foster parent "is committed to adopting the children and raising them as her own."

In *State in the Interest of K.V. & K.V.*, 14-163, p. 18 (La.App. 3 Cir. 11/21/14), 161 So.3d 795, 806, upon concluding that termination of parental rights was in the best interests of the children, who had been removed from their parents' custody when they were both less than a year old, a panel of this court stated the following:

> Finally, given the twins' age, the fact that they have spent the majority of their lives with their foster parents, and the parents' lack of interest in and/or their ability to comply with their case plan, we find that it is in the twins' best interest to have their biological parents' rights terminated so that they can be adopted by their foster parents who have for more than two years of their young lives provided them with a "safe, stable, and permanent home." La.Ch.Code art. 1015.

Similarly, in the instant case, T.M.B. and T.T.B. were one year old and four months old, respectively, when they were removed from their parents' custody. At the time of trial, they had been in the custody of their foster parent for over two years, constituting a majority of their lives. Moreover, in its written reasons for ruling, the trial court stated the following:

> The children are placed together and thriving in the adoptive placement in which they have been residing since removal. These children have bonded with their foster parent[] for over two years now and it would be unfair to move them out of the only home they have ever known. It is not in their best interest to remain in limbo in hopes that one day their parents will address the same issues that brought them into care initially.

After reviewing the record, we do not find that the trial court manifestly erred in concluding that termination of T.B.'s parental rights was in the best interests of the children. While T.G. asserts that the children have a bond with him, a report from DCFS to the trial court dated August 31, 2015 stated that "[t]he youngest children do not have a secure attachment with [T.G.] because he visits

12

infrequently." Ms. Robertson also testified at trial that while the children recognize that T.G. is their father, the bond between T.G. and the children is "not a parent-to-child bond." Conversely, the August 31, 2015 report related that the children "are well adjusted in the home of [their foster parent] and have a great bond with her." The May 2, 2016 DCFS report also stated that the foster parent "is providing excellent care to the children." Moreover, and according to Ms. Robertson's testimony, the foster parent "is willing and interested in adopting the children[.]"

For these reasons, we find that this assignment of error lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court terminating the parental rights of T.G. as to T.M.B. and T.T.B., and certifying T.M.B. and T.T.B. as eligible for adoption, is affirmed. Costs are assigned to the appellant, T.G.

**AFFIRMED.**