STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-39

STATE IN THE INTEREST OF D. H. L.

**********

APPEAL FROM THE
JENNINGS CITY COURT
PARISH OF JEFFERSON DAVIS, DOCKET NO. J-116-96-E
HONORABLE C. STEVE GUNNELL, CITY JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and
James T. Genovese, Judges.

**REVERSED.**

Robert J. Lounsberry, Sr.
214 E. Nezpique Street
Post Office Box 1351
Jennings, Louisiana 70546
(337) 616-3888
COUNSEL FOR DEFENDANT/APPELLANT:
    D.B.

Nick Pizzolatto, Jr.
Louisiana Department of Social Services
Office of Community Services
1919 Kirkman Street
Lake Charles, Louisiana 70601
(337) 491-2963
COUNSEL FOR APPELLEE:
    State of Louisiana

**David Emile Marcantel**
**302 E. Nezpique Street**
**Post Office Box 1366**
**Jennings, Louisiana 70546**
**(337) 824-7380**
**COUNSEL FOR MINOR/APPELLEE:**
**D.H.L.**


**Charles Bull, Jr.**
**206 South Adams Street**
**Post Office Box 400**
**Welsh, Louisiana 70591**
**(337) 734-2811**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**K.L.**

**GENOVESE, Judge.**

D.B.,[1] the biological father of the minor child, D.H.L., appeals a judgment of the trial court terminating his parental rights and certifying D.H.L. eligible for adoption. For the following reasons, we reverse the judgment of the trial court.

## PROCEDURAL HISTORY

The minor child, D.H.L., was born on August 26, 2003. D.H.L., whose mother is K.L., was placed into the custody of the State of Louisiana, Department of Social Services (DSS), on April 13, 2004, when she was only seven months old. The incident triggering D.H.L.'s placement into the custody of DSS occurred on April 10, 2004. The Jennings Police Department responded to a complaint at K.L.'s home wherein it was determined that K.L.'s live-in boyfriend,[2] E.O., had allegedly beaten K.L.'s five-year-old son, D.L., on his back with a large belt . It was also alleged that during the beating, K.L. held her son down while E.O. beat him. DSS removed both D.L. and D.H.L. from K.L.'s custody pursuant to an oral instanter order granted by the trial court on April 13, 2004. On April 15, 2004, a written instanter order temporarily placing D.L. into the custody of his biological father, D.B., was signed by the trial court; however, the same instanter order placed D.H.L. into the custody of DSS since her paternity had not yet been determined. Both D.L. and D.H.L. were adjudicated children in need of care pursuant to La.Ch.Code art. 666[3] on June 17,

---

[1]Pursuant to Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

[2]On April 10, 2004, K.L. and E.O. were living together; however, K.L. and E.O have since married.

[3]Louisiana Children's Code Article 666 provides, in pertinent part, "Following the adjudication hearing, the court shall immediately declare whether the evidence warrants a child in need of care adjudication."

2004. On October 19, 2004, the results of the DNA test established that D.B. was also D.H.L.'s biological father. D.H.L. has remained in the custody of a non-related foster family selected by DSS, continuously, since April 13, 2004.

On January 20, 2006, DSS filed a Petition for Certification for Adoption and Termination of Parental Rights.[4] The petition alleged, in relevant part:

5.

As to the mother, [K.L.], and the father, [D.B.,] the Louisiana Department of Social Services, Office of Community Services, represents that their parental rights be terminated under [La.Ch.Code art.] 1015, Sections (4)[5] and (5).[6]

6.

[D.H.L.] has been in the State's custody since April 13, 2004 and [sic] where she remains.

---

[4]Though the State's petition also sought to terminate the parental rights of K.L., evidence at the termination hearing was only received relevant to the termination of the parental rights of the father, D.B.

[5]The grounds for termination of parental rights due to abandonment according to La.Ch.Code art. 1015(4) are:

Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

[6]The grounds for termination of parental rights according to La.Ch.Code art. 1015(5) are:

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

7.

Despite the interventions attempted, there is no reasonable expectation of significant improvement in the parents' condition or conduct in the near future, and considering the child's age and her need for a stable and permanent home, the parental rights of the mother and the father must be permanently terminated, for the following nonexclusive reasons, to-wit:

1.      The parents have failed to avail themselves of services offered.

2.      The mother and father have not done their case plan.

3.      The parents' [sic] smoke and the child is allergic to cigarette smoke. The parents do not stop smoking when they visit the child[,] and the child needs medical attention as a result of allergic reactions after visiting with her parents.

4.      The child is two years old [and] has been in the State's custody for over one year. She needs a stable and permanent home and cannot wait any longer for her parents to rehabilitate.

5.      There has been no significant parental compliance with the case plans for services approved by the court as necessary for the safe return of the child.

6.      There is no reasonable expectation of significant improvement in the parents' condition or conduct in the near future, considering the child's age and her need for a safe, stable, and permanent home.

8.

It is in the child's best interest that all parental rights be terminated and [that] she be certified available for adoption.

Hearings on DSS's petition to terminate the parental rights of D.B. were held on May 12, 2006, February 1, 2007, and February 2, 2007. At the conclusion of the hearings, the trial court took the matter under advisement. On October 11, 2007, the trial court issued written reasons for judgment wherein the parental rights of D.B. were terminated, and D.H.L. was certified eligible for adoption. In its written

reasons, the trial court declared that it based its ruling on its findings that: (1) D.B. had failed to provide significant contributions to D.H.L.'s care and support for a period of six consecutive months pursuant to La.Ch.Code art. 1015(4)(b); (2) D.B. had failed to maintain significant contact with D.H.L. for a period of six consecutive months pursuant to La.Ch.Code art. 1015(4)(c); and (3) D.B. had established "a pattern of behavior" whereby he had to be "constantly forced" to comply with the court-ordered case plan. On November 7, 2007, the trial court issued an amended version of its written reasons for judgment wherein it declared, "No evidence was introduced regarding the parental rights of the mother of [D.H.L.]; therefore, the parental rights of [K.L.] are not terminated." The trial court signed a judgment to this effect on December 6, 2007. The father, D.B., appeals the trial court's termination of his parental rights.

## ASSIGNMENTS OF ERROR

D.B. asserts four assignments of error:

1. [T]he trial court erred by finding the State of Louisiana had proved by clear and convincing evidence that [D.B.] abandoned his child by not supporting his child for any six month consecutive period and not maintaining contact with her for any [six] consecutive months.

2. [T]he trial court erred by finding [D.B.] did not substantially comply with his case plan.

3. [T]he trial court erred by failing to appoint an attorney to represent [D.B.] for the first fifteen months that the minor child was in custody.

4. [T]he trial judge erred by finding it was in the minor child's best interest that [D.B.]'s parental rights be terminated.

## LAW AND DISCUSSION

Our supreme court has recognized that the gravity of terminating parental rights

requires our courts to impose a stricter standard of proof than the preponderance of the evidence standard; rather, the State must prove by clear and convincing evidence at least one of the statutory grounds contained in La.Ch.Code art. 1015 in order to terminate a parent's rights. *See State ex rel. J.M.*, 02-2089 (La. 1/28/03), 837 So.2d 1247; La.Ch.Code art. 1035(A).[7] "Further, even upon finding that the State has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child's best interests." *State ex. rel. J.M.*, 837 So.2d at 1253; *see also* La.Ch.Code art. 1037(B).[8]

An appellate court cannot set aside a juvenile court's findings of fact regarding the termination of parental rights unless it is manifestly erroneous or unless those findings are clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47; *Rosell v. ESCO*, 549 So.2d 840 (La.1989). We conclude that the factual findings of the trial court are clearly wrong and manifestly erroneous. We, therefore, conduct a de novo review of the record.

### Grounds for Involuntary Termination of Parental Rights

The trial court's written reasons for judgment state that the six-month time period upon which it concluded that D.B. neither supported nor contacted D.H.L. was from April 13, 2004 through December 31, 2004. In fact, D.B. admitted at the trial of this matter that he did not begin to pay child support for D.H.L. until January of

---

[7]Louisiana Children's Code Article 1035(A) provides that "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence."

[8]Louisiana Children's Code Article 1037(B) provides:

> When the court finds that the alleged grounds set out in any Paragraph of Article 1015 are proven by the evidentiary standards required by Article 1035 and that it is in the best interests of the child, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers.

2005. However, it was not proven that D.B. was D.H.L.'s biological father until the results of the DNA test were obtained on October 19, 2004. We find that the trial court erred in holding D.B. legally responsible for the support of D.H.L. *prior to his paternity being established*. The trial court's reliance upon this six month period to conclude that the State had proven by clear and convincing evidence that D.B. had abandoned D.H.L. pursuant to La.Ch.Code art. 1015, sections (4) and (5) was legally incorrect.

Next, D.B. contends that the trial court erred in finding substantial non-compliance with his case plan. Louisiana Children's Code Article 1036(C) sets forth the evidence which may be considered in proving the lack of substantial parental compliance with the case plan as required by La.Ch.Code art. 1015(5):

> Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> (1) The parent's failure to attend court-approved scheduled visitations with the child.
>
> (2) The parent's failure to communicate with the child.
>
> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
>
> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
>
> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
>
> (7) The persistence of conditions that led to removal or similar potentially harmful conditions.

On October 19, 2004, DSS provided D.B. with a case plan which identified goals that he would be expected to achieve before he could obtain custody of D.H.L. According to the DSS case plan dated October 19, 2004, which is the first case plan adopted after D.B.'s paternity was established, the goals were identified as: (1) D.B. and M.P.[9] were to secure a home large enough for placement of D.H.L. and free of pets, smoke, and clutter; (2) D.B. was to seek and maintain employment; (3) D.B. and M.P. were not to allow anyone with a history of physical abuse to reside in their home; (4) D.B. and M.P. were to provide to DSS the names of individuals who reside with them in order for a criminal background check to be performed; (5) D.B. was to submit to random drug screens; (6) D.B. and M.P. were to submit to psychological evaluations with Dr. Alfred Buxton; (7) D.B. was to attend and successfully complete an anger management counseling program; and (8) D.B. and M.P. were to attend scheduled visits with D.H.L.

D.B. testified that he and M.P. complied with their case plan by: (1) moving out of their small apartment and into a larger, smoke-free, and pet-free home in June of 2005; (2) submitting to psychological evaluations; (3) completing an anger management program; and (4) maintaining employment. D.B. also testified that he began paying child support for D.H.L. in January of 2005 and, in fact, has paid in excess of the ordered amount.

At the trial of this matter, the crux of the State's case dealt with D.B. and M.P.'s defiance of the DSS directive that they keep D.H.L. away from smoke and pets due to her allergies. The State presented testimony regarding D.B. and M.P.'s alleged

---

[9]On October 19, 2004, D.B. and M.P. were living together; however, D.B. and M.P. have since married. Due to their co-habitation, M.P. was included in the DSS case plans formulated with regard to D.B.

non-compliance with the directive that they not smoke or allow pets around D.H.L. According to Ms. Jessica Frey (Ms. Frey), the DSS foster care case manager, there were occasions that D.H.L. smelled of smoke upon her return from visitation with D.B. and M.P. Ms. Frey also testified that she is certain that on at least one occasion, September 5, 2005, she witnessed M.P. smoking while driving with D.H.L. in the vehicle. M.P. was again seen by Ms. Frey smoking while driving on September 10, 2005; however, Ms. Frey could not positively ascertain whether D.H.L. was in the vehicle.

Our review of the record reveals that a large amount of testimony was devoted to the issue of whether D.B. and M.P. smoked in D.H.L.'s presence and/or allowed pets near D.H.L. Aside from the conflicting testimony of the interested parties, i.e., the biological father who wants custody, the biological mother who desires that the foster family be allowed to adopt D.H.L., and, of course, the foster family who desires to adopt D.H.L., what is critical and crucial to this case are the progress reports rendered by the DSS foster care case workers assigned to this case. While the testimony at trial focused on whether or not D.H.L.'s allergies were exacerbated by D.B. and M.P.'s alleged smoking and the presence of pets near D.H.L., there is also evidence and testimony that D.H.L.'s foster mother, C.M., also smoked and had a pet in her home. On April 29, 2005, Ms. Candace Kelly, supervisor of Child Protection Services in Jennings, authored a letter to the trial court wherein she wrote:

> [D.H.L.] suffers from allergies and the home [of the foster parents] is kept free of cigarette smoke although the foster parents do have a dog in their home. [C.M.] stated that [D.H.L.] is not allergic to the dog and, in fact, she does not appear to have any allergic reaction when seen by OCS personnel.

With such incriminating evidence as to all of the interested parties, we find that the

8

State has failed to meet its legal burden of proof, by clear and convincing evidence, that there was substantial non-compliance on the part of D.B. warranting a termination of his parental rights.

***D.B.'s Right to Counsel***

Louisiana Children's Code Article 608 provides that a parent is entitled to a court-appointed attorney. D.B. asserts that he was unfairly disadvantaged throughout the progression of this matter because counsel was not appointed to represent him until approximately fifteen months after D.H.L. was placed into the custody of DSS. We find no indication in the record that D.B. ever waived his right to counsel. The trial court's minute entry from a review hearing held on June 16, 2005 indicates that it was D.B. who ultimately requested that an attorney be appointed to represent his interest in this matter.

When D.H.L. was placed into the custody of DSS on April 13, 2004, counsel was appointed to represent D.H.L.'s mother, K.L.; however, D.B. was not afforded the same protection. Even though D.B. had yet to be confirmed as the biological father of D.H.L., he was clearly entitled to representation as the biological father of D.L., the minor whose physical abuse at the hands of K.L.'s boyfriend triggered these proceedings. Based on the facts set forth in the record of these proceedings, we find that the trial court's failure to afford D.B. legal representation prior to his request in June of 2005 is considerably consequential and a clear violation of the legal rights afforded D.B. as set forth in La.Ch.Code art. 608.

## DECREE

Based on our comprehensive examination of the record, we find that the State has failed to prove by clear and convincing evidence the elements alleged in its

9

Petition for Certification for Adoption and Termination of Parental Rights pursuant La.Ch.Code art. 1015, sections (4) and (5). For these reasons, we reverse the trial court's judgment terminating the parental rights of D.B.

**REVERSED.**