NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-996 consolidated with 16-997


STATE IN THE INTEREST OF

K.D.P., J.L.C. & J.S.C.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 26731 C/W NO. 28440
HONORABLE LILYNN ANNETTE CUTRER, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.**

Nick Pizzolatto, Jr.
Louisiana Department of Children & Family Services
1919 Kirkman Street
Lake Charles, LA 70601
Telephone: (337) 491-2066
COUNSEL FOR:
    Appellee – Louisiana Department of Children & Family Services

Bethany Blackson
Calcasieu Parish District Attorney's Office
901 Lakeshore Drive
Lake Charles, LA 70601
Telephone: (337) 437-3400
COUNSEL FOR:
    Appellee - State of Louisiana

**Luwanna Burnett**
**Child Advocacy Program**
**One Lakeshore Drive – Suite 1585**
**Lake Charles, LA 70629**
**Telephone:  (337) 491-2461**
**COUNSEL FOR:**
    **Appellees - K.D.P. (child), J.L.C. (child), and J.S.C. (child)**

**A.P. (mother)**
**In Proper Person**
**2310 Tuna Lane**
**Lake Charles, LA 70605**
**Telephone:  (337) 377-3851**
    **Appellant - A.P. (mother)**

**J.C. (father)**
**In Proper Person**
**1639 Whispering Pines Drive**
**Lake Charles, LA 70605**
**Telephone:  (337) 563-9164**
    **Appellant - J.C. (father)**

**THIBODEAUX, Chief Judge.**

Two minor children came into the custody of the State due to allegations of their parents' drug use, and a lack of adequate shelter and supervision. Citing a lack of substantial compliance with the case plan, the State filed a petition to terminate parental rights. The trial court terminated the parental rights of both parents and certified the children eligible for adoption. The father now appeals.

For the following reasons, we affirm.

I.

## ISSUE

We must determine whether the trial court erred in terminating the parental rights of the father for substantial non-compliance with his case plan.

II.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through* DOTD, 617 So.2d 880 (La.1993); *Rosell v.* ESCO, 549 So.2d 840 (La.1989). A trial court's findings on whether parental rights should be terminated are subject to the manifest error standard of review. *State ex rel. K.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759.

## FACTS AND PROCEDURAL HISTORY

This termination action deals with the father, J.C.[1], of his two minor children, J.L.C. and J.S.C.[2] J.C. has a significant history with the State spanning several years. The Department of Children and Family Services ("DCFS") first became involved with the family in September 2008, after receiving a validated complaint that J.S.C. was a drug-exposed newborn. In April 2009, a validated complaint was received as to both children due to inadequate shelter, lack of supervision, and the mother's drug and alcohol abuse. As a result of that complaint, the children came into State custody and both parents were given case plans to work, with the goal being reunification. J.C. satisfactorily worked his case plan and regained custody of his children.

Following J.C.'s reunification with his children, a complaint was validated in June 2013 regarding the sexual abuse of J.L.C. by a person whom the parents had allowed her to stay with alone. As a result of that validated complaint, the children were left in the home and a Family Services case plan was implemented. A few months later, in November 2013, a complaint was validated for the physical abuse of J.L.C. by J.C.

In March 2014, the State filed a petition seeking to adjudicate the children as neglected children in need of care due to the recent complaints of sexual and physical abuse of J.L.C., and the parents' refusal to cooperate with their

---

[1]The initials of the children and their parents are used herein pursuant to Uniform Rules-Courts of Appeal, Rule 5-2. *See also* Uniform Rules—Courts of Appeal, Rule 5-1.

[2]No. 16-996 and 16-997 both relate to the termination of parental rights of J.L.C. & J.S.C. Thus, the cases will be considered under one heading. The children's mother, A.P., failed to timely file a brief within the period of time provided by Rule 2-21.7 of the Uniform Rules— Court of Appeal, and her appeal, No. 16-997, was dismissed.

case plans. The State's plan was to leave the children in the parents' home while they worked their case plans. However, the parents failed to appear in court on August 13, 2014, for the adjudication hearing. Due to their history with the agency, the recently validated sexual and physical abuse complaints, and their continued non-compliance with the Family Services case plan, the children were removed from the home and placed in the State's custody.

On December 18, 2015, the State filed a Petition for Certification for Adoption and Termination of Parental Rights, seeking to terminate J.C.'s parental rights to J.L.C. and J.S.C. In its petition, the State alleged that J.C. abandoned his children pursuant to La.Ch.Code art. 1015(4)[3] and (5)[4] and Article 1036. The trial court determined that J.C. failed to comply with the requirements of the case plan.

---

[3]Louisiana Children's Code Article 1015 was subsequently revised by 2016 La. Acts No. 608, § 1. At the time the petition was filed, La.Ch.Code art. 1015(4) providing the following, in pertinent part:

The grounds for termination of parental rights are:

(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

. . . .

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

[4]Louisiana Children's Code Article 1015 was subsequently revised by 2016 La. Acts No. 608, § 1. At the time the petition was filed, La.Ch.Code art. 1015(5) provided:

The grounds for termination of parental rights are:

(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

3

Having found that DCFS met its burden of proof by clear and convincing evidence, the trial court held that it was in the best interests of the children to terminate J.C.'s parental rights. The court further found that there was no reasonable expectation of parental compliance that would result in J.C.'s reunification with his children.

## IV.

## <u>LAW AND DISCUSSION</u>

J.C. asserts that the trial court erred in determining that he failed to substantially comply with his case plan, such that termination of his parental rights pursuant to La.Ch.Code art. 1015(4) and 1015(5) is unwarranted. Specifically, J.C. argues that he had stable housing, a job, visited with his children, and paid parental contributions. In support of its' termination petition, the State offered the testimony of the parents, as well as the family's three DCFS workers: Christina Phillips (August 2014 to January 2015), Lazetter West (January 2015 to March 2016), and the current DCFS worker, Kissie Edwards, who began working on the case in March 2016.

Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights; however, the State need only establish one ground for termination. In addition, La.Ch.Code art. 1035(A) states that, "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." "Further, even upon finding that the State has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child's best interests." *State ex rel. J.M.*, 02-2089 (La. 1/28/03), 837 So.2d 1247, 1253.

"A lack of parental compliance may be shown with proof of either failure to visit the child, to communicate with the child, failure to contribute to the cost of the child's foster care or failure to comply with the required treatment and rehabilitation services." *State in the Interest of J.K.G.*, 11-908 (La.App. 3 Cir. 1/11/12), 118 So.3d 10 (2012) (quoting *State ex rel. M.H. v. K.W.H.*, 40,332 (La.App. 2 Cir. 9/23/05), 912 So.2d 88).  J.C.'s case plan included certain requirements that had to be met in order for him to be reunited with his children. These requirements included:  1) maintain safe housing; 2) maintain a legal source of income; 3) allow the agency access to the home on an on-going basis; 4) agree to pay $25 per child per month as parental contributions; 5) submit to random drug screens; 6) participate and successfully complete an agency approved parenting education program; and 7) attend all family meetings, court hearings, visits with the children, medical appointments, and any other appointments regarding his children.

The first requirement of J.C.'s case plan was to maintain safe housing. All three case workers, who worked the case from August 2014 until the trial in June 2016, testified that J.C. never had a stable residence once the children came into the State's custody in August 2013.  At the time of trial, J.C. was living in a travel camper and the records indicate that he had lived in at least seven different places since August 2013.

Another requirement of J.C.'s case plan was to pay $25 per child per month as parental contributions.  J.C. testified that he made one payment of parental support but following an injury and his release from worker's compensation he has not made any further payments.  The case workers who worked with J.C. testified that he failed to pay any parental contributions.

An additional requirement of J.C.'s case plan was that he participate and successfully complete an agency-approved parenting education program and demonstrate his knowledge learned and understanding of his children's needs. The record indicates that J.C. was involved in a parenting program, but because of his attitude, the program was closed. Specifically, J.C. refused to submit to a drug screen and was subsequently kicked out of the parenting program. J.C. further refused to submit to the recommended family counseling. J.C.'s first case worker, Ms. Phillips, testified that J.C. had not finished his parenting education. In addition, the second case worker, Ms. West, stated that J.C. had yet to complete a nurturing parent program and that she never approved the parenting class that J.C. claimed to have attended. As the trial court stated, "the Court finds it significant that [J.C.] has failed to complete a parenting program in the 18 months his children have been in the State's custody." We agree.

Last, one of the requirements of J.C.'s case plan was to attend all family team meetings, court hearings, and visits with the children. J.C. claims to have made all of the visits except for the ones that he did not know about. However, the testimony of the case workers indicates that J.C. made only 54% of his visits.

After reviewing the record, we find no manifest error in the trial court's determination that J.C. failed to substantially comply with his case plan. There is no doubt that J.C. has not complied with the requirements of the court-approved case plans as indicated by the trial testimony of each of the case workers, as well as the numerous DCFS reports filed with the trial court over the course of

these proceedings.[5] The evidence indicates that J.C. continues to lack substantial improvement in redressing the problems preventing reunification with his children, despite the significant length of time he has had to work on his case plan.

The trial court stated, and we agree, that "the State also met its burden of proof as to the third element of La. Ch.C. art. 1015(5); the lack of any reasonable expectation of significant improvement in the parents' conduct in the near future." Thus, the conditions which led to the children's removal still exist.

*Best Interests of the Child*

A trial court may terminate parental rights only if it finds that termination is in the best interest of the child. *See* La.Ch.Code art. 1037(B). *See State ex rel. D.H.L.*, 08-39 (La.App. 3 Cir. 4/30/08), 981 So.2d 906. "This analysis requires a balancing of the child's interests and the parent's interests; however, it has been repeatedly held that the interests of the child are paramount to that of the parent." *State in Interest of G.E.K.*, 14-682 (La.App. 3 Cir. 1/14/15), 155 So.3d 713, 716 (2016). The trial court found that J.C.'s extensive history of involvement with the State regarding the abuse and neglect of his children, and the children's need for permanency and stability meant it was in their best interest that parental rights be terminated. As stated by the trial court, "the parents' continued failure to address the issues that caused their children to come into the State's custody for the second time lead the Court to find that they are not able to care for J.L.C. or J.S.C. now or anytime in the near future."

---

[5]It should be noted that J.L.C. and J.S.C. have been in foster care since August 13, 2014, a period in excess of one year at the time the petition was filed to terminate parental rights. Thus, the first element of La.Ch.Code art. 1015(5), at least one year has elapsed since the children were removed from the parents, has been met.

J.C. has eight validations for neglect and/or abuse. Complaints involving J.L.C. and J.S.C. began when J.L.C. was only two years old and was born a drug-exposed baby. In addition, prior to this case, the two children had been previously removed from their parents and placed in the State's custody. The children were returned to J.C.'s custody but were again removed in 2014. Both children's need for a safe, stable, and permanent home could not be more obvious and necessary, and we find no error by the trial court in its conclusion that it is in the children's best interests that J.C.'s parental rights be terminated.

IV.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court terminating the parental rights of J.C. as to J.L.C and J.S.C., and certifying J.L.C. and J.S.C. eligible for adoption, is affirmed.

All costs are assessed to J.C.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.