NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-794

STATE OF LOUISIANA

IN THE INTEREST OF

S.H., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2015824
HONORABLE THOMAS DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and D. Kent Savoie, Judges.

AFFIRMED.

**Lloyd Dangerfield**
**Attorney at Law**
**703 E. University Ave.**
**Lafayette, LA 70503**
**(337) 232-7041**
**COUNSEL FOR APPELLEE:**
**J.H.**

**Diane E. Cote**
**825 Kaliste Saloom Road**
**Brandywine III, Room 150**
**Lafayette, LA 70508**
**(337) 262-5913**
**COUNSEL FOR APPELLEE:**
**Department of Children and Family Services**

**Franchesca L. Hamilton-Acker**
**Acadiana Legal Service Corp.**
**P. O. Box 4823**
**Lafayette, LA 70502-4823**
**(337) 237-4320**
**COUNSEL FOR APPELLEE:**
**S.H.**
**Sh.H.**
**Sk.H.**
**S.C.**
**Sy.H.**

**Vandana Chaturvedi**
**Acadiana Legal Services**
**1020 Surrey Street**
**Lafayette, LA 70501**
**(337) 237-7320**
**COUNSEL FOR APPELLEE:**
**Sh.H.**
**Sy.H.**
**Sk.H.**
**S.C.**
**S.H.**

**Tracey Davenport-McGraw**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Daniel Ginnetty**
**15th Judicial Public Defender's Office**
**P.O. Box 3622**
**Lafayette, LA 70502**
**(337) 889-5675**
**COUNSEL FOR APPELLANT:**
    **T.C.H.**

**SAUNDERS, JUDGE.**

Five minor children came into the custody of the State due to allegations of their parents' drug use, lack of adequate shelter, neglect, and domestic violence. Citing a lack of substantial compliance with the case plan, the State filed a petition to terminate parental rights and certified the children eligible for adoption. The mother now appeals.

For the following reasons, we affirm.

I.

## ISSUE

We must determine whether the trial court erred in terminating the parental rights of the parents for substantial non-compliance with their case plan.

II.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A trial court's findings on whether parental rights should be terminated are subject to the manifest error standard of review. *State in the interest of K.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759.

III.

## FACTS AND PROCEDURAL HISTORY

This termination action deals with the mother, T.C.,[1] and the father, J.H., of their five minor children, S.E.H, S.C.H., S.D.C., S.F.H. and S.E.H., who have a significant history with the State spanning several years. The Department of

---

[1]The initials of the children and their parents are used herein pursuant to Uniform Rules-Courts of Appeal, Rule 5-2. *See also* Uniform Rules—Courts of Appeal, Rule 5-1.

Children and Family Services ("DCFS" or "Department") first became involved with the family in August 2015, after receiving a validated complaint of neglect/dependency as to all five children.

T.C. was screened on August 14, 2015, at which time her urine screen confirmed amphetamines and methamphetamines and her hair screen confirmed amphetamines and Cocaine. J.H. was requested to be screened on August 18, 2015, but he did not make himself available at that time. T.C. was referred to Family Preservation, however, she rescheduled three (3) times and missed all three appointments. Due to T.C.'s non-compliance with DCFS, the Department sought and obtained an Oral Instanter Order on October 28, 2015, and took the children into custody. By judgment rendered and signed on December 16, 2015, the children were adjudicated "Children in Need of Care." Initially, both parents were given plans to work, with the goal being reunification. T.C. failed to satisfactorily work her case plan, and J.H. failed to comply with any of the elements of his case plan. As a result, neither parent regained custody of their children.

During the pendency of these proceedings, numerous case hearings were held in which T.C. was made aware that her parental rights could be terminated if she did not work her case plan, yet she continually failed to do so. At a review hearing on July 26, 2016, the goal was changed to adoption in the child in need of care proceeding.

On December 13, 2016, the Department filed the Petition for Termination of Parental Rights and Certification for Adoption, with notice advising T.C. that she could permanently lose her rights. In its petition, the State alleged that T.C. and J.H. abandoned their children pursuant to La.Ch.Code art. 1015(5)[2] formerly

---

[2]Louisiana Children's Code Article 1015 was subsequently revised by 2016 La. Acts No. 608, § 1. At the time the petition was filed, La.Ch.Code art. 1015 provided the following, in pertinent part:

2

1015(4). The trial in this matter was originally scheduled for January 23, 2017. The matter was continued and reset to be heard on March 20, 2017. The trial was continued once again and set for May 22, 2017. The continuances granted in this matter gave T.C. an additional four months to work her case plan.

At the trial of this matter, the trial court found that there was no reasonable expectation of parental compliance that would result in T.C.'s reunification with her children. The court terminated T.C.'s parental rights and found that doing so was in the children's best interest. It is from the termination of parental rights judgment that T.C. appeals. The father, J.H., did not appeal.

IV.

**LAW AND DISCUSSION**

T.C. asserts that the trial court erred in determining that she failed to substantially comply with her case plan, such that termination of her parental rights pursuant to La.Ch.Code art. 1015(6) is unwarranted. Specifically, T.C. argues that she was the victim of domestic violence and has since removed herself from that situation; that she has complied with some, but not all of the treatment and rehabilitative services required by the Department; that she has attended all of the court hearings; that she has visited her children on some, but not all of the

---

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

. . . .

(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

3

scheduled visits; that she has recently enrolled in an inpatient substance abuse program through the Lafayette Parish Sheriff's Department; and that she is confident that if given additional time to complete the case plan, she would be successful. In support of its termination petition, the State offered the testimony of DCFS case worker Alexis[3] Hinson ("Hinson"), who began working on the case in October 2015.

Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights; however, the State need only establish one ground for termination. In addition, La.Ch.Code art. 1035(A) states that, "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." "Further, even upon finding that the State has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child's best interests." *State in the interest of J.M.*, 02-2089, pp. 9-10 (La. 1/28/03), 837 So.2d 1247, 1253.

"A lack of parental compliance may be shown with proof of either failure to visit the child, to communicate with the child, failure to contribute to the cost of the child's foster care or failure to comply with the required treatment and rehabilitation services." *State in the Interest of J.K.G.*, 11-908, p. 6 (La.App. 3 Cir. 1/11/12), 118 So.3d 10, 15 (quoting *State In the Interest of M.H. v. K.W.H.*, 40,332 (La.App. 2 Cir. 9/23/05), 912 So.2d 88). T.C.'s case plan included certain requirements that had to be met in order for her to be reunited with her children. These requirements included: 1) obtain a legal source of income; 2) obtain adequate housing and maintain it for a six-month period; 3) attend and participate

_____

[3] This spelling will be used as it is consistent with the transcript even though the spelling "Elexis" also appears in the record (see, e.g., letter signed by Hinson with spelling "Elexis" at Vol. 2, pg. 264).

4

in and complete parenting classes; 4) complete a substance abuse assessment to determine the type of treatment needed; 5) make parental contributions; 6) submit to random drug screens; 7) attend and participate in the Family Violence Intervention Program; and 8) attend bi-weekly visits with the children.

The first requirement of T.C.'s case plan was to obtain a legal source of income. DCFS case worker Hinson testified that T.C. failed to provide her with proof of income.

The second requirement of T.C.'s case plan was to obtain adequate housing and maintain it for a six-month period. Hinson testified that, in the beginning, T.C. had housing, but that around July 2016, T.C. indicated to her that she had moved twice. However, Hinson was never able to verify that T.C. had lived at either of the addresses she had been provided by T.C.. Hinson testified that T.C. then provided her with a fourth address, which she was also unable to verify. Hinson further testified that on the date of the hearing to terminate T.C.'s parental rights, T.C. told her that she was staying at the ARC housing, as she had enrolled in the 28-day housing program a week earlier.

The third requirement of T.C.'s case plan was that she participate in and successfully complete an agency-approved parenting education program and demonstrate her knowledge learned and understanding of her children's needs. Hinson testified that T.C. failed to participate in these parenting classes.

The fourth requirement of T.C.'s case plan was that she complete a substance abuse assessment to determine the type of treatment needed. Hinson testified that T.C. never completed the substance abuse assessment.

The fifth requirement of T.C.'s case plan was that she make parental contributions. Hinson testified that T.C. never made any parental contributions.

The sixth requirement of T.C.'s plan was that she submit to random drug screens. Hinson testified that while T.C. cooperated with some random drug screens, she also tested positive on January 11, 2017. She further testified that T.C. failed to show for a February 13, 2017 drug screen, which was considered positive. In addition, Hinson testified that she had not asked T.C. to submit to another random drug screen after February 2017, due to T.C.'s incarceration from March 21, 2017 through May 19, 2017.

The seventh requirement of T.C.'s case plan was that she participate and successfully complete an agency-approved Family Violence Intervention Program. Hinson testified that T.C. failed to participate in that program.

The final requirement of T.C.'s case plan was that she attend bi-weekly visits with the children. Hinson testified that T.C. made only fifteen (15) of the scheduled visits with her children, and that she missed the other nineteen (19) visits.

Given the above, we find no manifest error in the trial court's determination that T.C. failed to substantially comply with her case plan. There is no doubt that the trial court's finding that T.C. has not complied with the requirements of the court-approved case plan is more than reasonable given the trial testimony of the case worker, and the numerous DCFS reports filed with the trial court over the course of these proceedings. The evidence indicates that T.C. continues to lack substantial improvement in redressing the problems preventing reunification with her children, despite the significant length of time she has had to work on her case plan.

The trial court stated, and we agree, that:

> The State of Louisiana, Department of Children and Family Services has met its burden of proof by clear and convincing evidence under Louisiana Children's Code Article 1015(5) . . . ; that greater than one

year has elapsed since the children were removed from the parents' custody; that said parents have failed to substantially comply with their respective court approved case plans including but not limited to failing to complete substance abuse treatment, after care, mental health treatment, parental contributions, unstable housing and lack of substantial improvement in redressing the problems preventing reunification; . . . . that there is on reasonable expectation of significant improvement in said parents' condition or conduct in the near future; and, considering the children's young age and need for a safe and permanent home that the termination of parental rights is in the best interest of the minor children.

Thus, the conditions which led to the children's removal continued to exist at the time of trial.

### *Best Interests of the Child*

A trial court may terminate parental rights only if it finds that termination is in the best interest of the child. *See* La.Ch.Code art. 1037(B). *See State in the Interest Of D.H.L.*, 08-39 (La.App. 3 Cir. 4/30/08), 981 So.2d 906. "This analysis requires a balancing of the child's interests and the parent's interests; however, it has been repeatedly held that the interests of the child are paramount to that of the parent." *State in the Interest of G.E.K.*, 14-682, p. 3 (La.App. 3 Cir. 1/14/15), 155 So.3d 713, 716.

With regards to the mother, T.C., the trial court found that T.C. had been given multiple chances to work her case plan, yet she has failed to do so until very recently, and that she has also failed to address her substance abuse and mental health issues. The trial court further found that it appeared from T.C.'s testimony as though she was presently enrolled in an inpatient substance abuse program through the Lafayette Parish Sheriff's Office, and, although encouraging, there is no way of knowing if this time she will finish and follow through with the long-term treatment recommendations. The trial court further found that the children have a right to permanency and stability which they cannot maintain if placed with their mother, and, as such, it would be an injustice to the children to continue to

give the mother unlimited chances to work her case plan. The trial court further found that it is not in the children's best interest to remain in limbo in hopes that one day their mother will finally address the issues that brought them into care initially, and that considering the children's young age and need for a safe, stable, and permanent home, the best interest of the children is served by terminating the parental rights of their parents, thereby releasing them for adoption. Given the accuracy of the above and the evidence of such in the record, we uphold the trial court's finding that terminating T.C.'s parental rights is in the best interest of the children.

IV.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court terminating the parental rights of T.C. and J.H. and certifying S.E.H., S.C.H., S.D.C., S.F.H., and S.E.H. eligible for adoption, is affirmed.

All costs are assessed to T.C.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.