NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-390

STATE OF LOUISIANA

IN THE INTEREST OF

T. D. N. AND G. N.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC2016129
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.

AFFIRMED.

**Lloyd Dangerfield**
**Attorney at Law**
**703 E. University Avenue**
**Lafayette, LA 70503**
**(337) 232-7041**
**COUNSEL FOR OTHER APPELLANT:**
**B. P. N. (father)**

**L. Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine 3, Room 150**
**Lafayette, LA 70508**
**(337) 262-1555**
**COUNSEL FOR OTHER APPELLEE:**
**State of Louisiana, DCFS**

**Franchesca Hamilton-Acker**
**Acadiana Legal Service Corp.**
**P. O. Box 4823**
**Lafayette, LA 70502-4823**
**(337) 237-4320**
**COUNSEL FOR OTHER APPELLEE:**
**T. D. N. (child)**
**G. N. (child)**

**Keith Stutes**
**District Attorney, Fifteenth Judicial District**
**Tracy Davenport-McGraw**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR OTHER APPELLEE:**
**State of Louisiana**

**Daniel Ginnetty**
**15th Judicial PDO**
**PO Box 3622**
**Lafayette, La 70501**
**(337) 889-5675**
**COUNSEL FOR OTHER APPELLEE:**
**S. S. B. (mother)**

**CASA of Acadiana**
**Casa Coorinator**
**227 La Rue France**
**Lafayette, LA 70508**
**(337) 268-5111**
**COUNSEL FOR OTHER APPELLEE:**
    **CASA of Acadiana**

**Kathryn McConnell**
**c/o CWS, Case Worker**
**2729 Veterans Memorial Drive**
**Abbeville, LA 70510**
**(337) 898-1430**
**COUNSEL FOR OTHER APPELLEE:**
    **Vermillion Parish, Dept. of Children & Family Services**

**SAUNDERS, JUDGE.**

Two minor children came into the custody of the State when the agency received a report of alleged neglect. According to the report, the father was being arrested on an active warrant due to traffic violations, and it was alleged that he had mental health issues. The father was unable to provide adequate care and supervision for his children due to his incarceration. At the time, the whereabouts of the children's biological mother were unknown, and the agency's attempts to locate relatives were to no avail. The children were placed together in a certified foster/adoptive home, and a case plan aimed at reunification was submitted to the father, which he failed to follow. Citing non-compliance with the case plan, the State filed a petition to terminate parental rights and certified the children eligible for adoption. The father now appeals.

For the following reasons, we affirm.

I.

**ISSUE**

We must determine whether the trial court erred in terminating the parental rights of the father for substantial non-compliance with their case plan.

II.

**STANDARD OF REVIEW**

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A trial court's findings on whether parental rights should be terminated are subject to the manifest error standard of review. *State in the interest of K.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759.

III.

**FACTS AND PROCEDURAL HISTORY**

This termination action deals with the father, B.P.N,[1] of his two minor children, T.D.N. and G.N., who have a history with the State spanning twenty-five (25) months. The Department of Children and Family Services ("DCFS" or "Department") first became involved with the family in February 2016, when it received a report of alleged neglect. According to the report, B.P.N. was being arrested on an active warrant due to traffic violations, and it was alleged that he had mental health issues. At that time, B.P.N was transported University Hospital for assessment and observation and was later transported to Lafayette Parish Correctional Center, leaving the children without a caretaker. An in-home safety plan could not be established. At the time, the whereabouts of the children's biological mother were unknown, and DCFS' attempts to locate relatives were to no avail. B.P.N. was unable to provide adequate care and supervision for his children due to his incarceration, which resulted in the children being placed together in a certified foster/adoptive home. B.P.N. was provided with a case plan aimed at reunification that addressed the following: housing and verification, parenting education classes, legal income and monthly verification, substance abuse assessment, random drug screens, visitation with the children and with the agency, mental health assessment, and parental contributions.

Throughout the pendency of these proceedings, numerous case hearings were held in which B.P.N. was made aware that his parental rights could be terminated if he did not work his case plan, yet he continually failed to do so. At a review hearing

---

[1]The initials of the children and their parents are used herein pursuant to Uniform Rules-Courts of Appeal, Rule 5-2. *See also* Uniform Rules—Courts of Appeal, Rule 5-1.

on April 25, 2016, the goal was changed to adoption in the child in need of care proceeding.

On June 30, 2017, the Department of Children and Family Services filed a Petition for Termination of Parental Rights and Certification for Adoption. In its petition, the State alleged that pursuant to La.Ch.Code art. 1015(6)[2], the parental rights of B.P.N. should be terminated inasmuch as B.P.N. has failed to substantially comply with his case plan for reunification with his children.

The trial in this matter was originally scheduled for August 7, 2017, but was continued three times thereafter, first to October 16, 2017, then to January 22, 2018, then to February 5, 2018, before finally being held on March 12, 2018. The continuances granted in this matter gave B.P.N. an additional six months to work his case plan.

At trial of the court found that B.P.N.'s conduct and behavior over the last two (2) plus years that he had to work his case plan demonstrated a true lack of interest in parenting his children, and that there was no reasonable expectation of parental compliance that would result in B.P.N.'s reunification with his children. The court terminated B.P.N.'s parental rights and found that doing so was in the children's best interest. It is from the termination of parental rights judgment that B.P.N. appeals.

---

[2] Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

IV.

## LAW AND DISCUSSION

B.P.N. asserts that the trial court erred in determining that he failed to substantially comply with his case plan, such that termination of his parental rights pursuant to La.Ch.Code art. 1015(6) is unwarranted.  Specifically, B.P.N. argues that he had housing; employment; clean screens;  was bonded and communicated with his children; and was cooperative and available.

Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights; however, the State need only establish one ground for termination.  In addition, La.Ch.Code art. 1035(A) states that, "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence."  "Further, even upon finding that the State has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child's best interests." *State in the interest of J.M.*, 02-2089, pp. 9-10 (La. 1/28/03), 837 So.2d 1247, 1253.

"A lack of parental compliance may be shown with proof of either failure to visit the child, to communicate with the child, failure to contribute to the cost of the child's foster care or failure to comply with the required treatment and rehabilitation services." *State in the Interest of J.K.G.*, 11-908, p. 6 (La.App. 3 Cir. 1/11/12), 118 So.3d 10, 15 (quoting *State In the Interest of M.H. v. K.W.H.*, 40,332 (La.App. 2 Cir. 9/23/05), 912 So.2d 88).  B.P.N's case plan included certain requirements that had to be met in order for him to be reunited with his children.  These requirements included: 1) housing and verification/maintaining contact with agency/advising agency of changes; 2) parenting education classes; 3) legal income and monthly verification; 4) substance abuse assessment/random drug screens; 5) visitation with

children and with the agency; 6) mental health assessment; and 7) parental contributions of $20 per month.

**Housing and Verification:**

The first requirement of B.P.N.'s case plan was that he obtain and verify adequate housing, maintain contact with DCFS, and keep DCFS informed of changes. DSFS Supervisor Chasity Williams ("Williams"), Child Welfare Specialist Michelle Mouton ("Mouton"), and case worker Amanda Quinn ("Quinn") testified regarding their involvement in this matter. The case workers testified that between February 1, 2016, the day the children entered care, and May 19, 2016, DCFS had no knowledge of B.P.N.'s whereabouts. On May 19, 2016, B.P.N.'s case manager spoke with B.P.N., who informed her that he was residing in Crowley, Louisiana with his brother. B.P.N. provided his case worker with an address in Crowley but was never available at the address given. Contact with B.P.N. was lost in August of 2016 until November 2, 2016 when B.P.N. called DCFS to advise that he had been incarcerated and was released on October 31, 2016. He further advised that he would be entering a substance abuse program in Baton Rouge, the All Way House. Although he entered the substance abuse program as advised, he left the halfway house in November of 2016 without providing a forwarding address. After being seen in the Crowley area in November of 2016, B.P.N. subsequently lived with two different males in the Baton Rouge area between November 2016 and the fall of 2017. DCFS was unable to assess B.P.N.'s home from January to August of 2017, so they requested assistance from the Baton Rouge DCFS office. On May 25, 2017, B.P.N.'s Baton Rouge case worker began attempts to assess his residence but was unable to enter the home until July 11, 2017. On her initial attempt, B.P.N.'s case worker noticed an eviction notice on his door, which B.P.N. later told her was the result of a misunderstanding. On another occasion, although B.P.N. was present at

5

the home, he advised the owner to tell his case worker that he did not want to see her. In August 2017, B.P.N.'s case was transferred to the East Baton Rouge DCFS office. B.P.N.'s case worker at the East Baton Rouge DCFS office was unable to make contact with him until September 27, 2018, and was never able to assess his prior home because he moved and did not provide a forwarding address. Although the second home appeared adequate, B.P.N. was only renting a room. When the owner of the home died, B.P.N. moved again without advising DCFS until late November 2017 that he had moved back to Crowley, Louisiana. B.P.N. has never provided timely notification of his moves and has never provided written verification of his housing situations. DCFS was only able to assess his current housing situation in February of 2018, just prior to the trial.

**Parenting Education Classes:**

The second requirement of B.P.N.'s case plan was that he participate in and complete an agency-approved parenting education program. The case workers testified that although parenting education was included on all of B.P.N's case plans, he refused to participate, stating that he had completed parenting classes the first time the children entered care in 2013. B.P.N. made no effort to complete this portion of the case plan until February 9, 2018, just prior to the last trial date, when B.P.N. requested to be referred to parenting education classes.

**Legal Income and Monthly Verification:**

The third requirement of B.P.N.'s case plan was that he obtain and verify employment. The case workers testified that until December of 2017, B.P.N. never verified his employment. Prior to December 2017, B.P.N. had only advised that he was doing odd jobs working for cash. B.P.N. informed his case worker that once his criminal charges were cleared he would begin working for Frank's Casing Crew in

Pennsylvania.[3] B.P.N. provided his case work with new hire paperwork and an offer letter, but she was unable to verify this information as the paperwork failed to include any contact information for the employer.

**Substance Abuse Assessment/Random Drug Screens:**

The fourth requirement of B.P.N.'s case plan was that he participate in and complete a substance abuse assessment. The case workers testified that B.P.N. did not attend substance abuse treatment and assessment as required. B.P.N. left All Way House in Baton Rouge prior to completion of the program. Although B.P.N. attended a substance abuse assessment while in Baton Rouge, he attended only 3 of the 6 classes to which he was referred. Until 2018, no random drug screens were performed on B.P.N., in large part due to his unavailability. On January 31, 2018, B.P.N. was asked to submit to urine and hair follicle drug screens. B.P.N. refused the hair follicle test, saying he would not submit until he got records from his dentist. B.P.N. never provided dental records and a refusal is considered a positive for case plan compliance purposes. B.P.N.'s urine screens submitted on January 31, 2018 and February 16, 2018 were negative.

**Visitation with Children and with Agency**

The fifth requirement of B.P.N.'s case plan was that B.P.N. visit with his children every other week. The case workers testified that B.P.N. did not visit with his children at all between February 1, 2016 and May 26, 2016, and that he visited with them five (5) times between May 26, 2016 to August 3, 2016, when DCFS was able to speak with him to try to schedule visits. B.P.N. only visited with the children four (4) times in 2017 and three (3) times in 2018. It is unclear why B.P.N. failed to attend scheduled visits or maintain contact with DCFS, although he may have been

---

[3] B.P.N. was charged with armed robbery, pled guilty to theft over five hundred dollars, was sentenced to three years, the sentence was suspended, and he is currently on probation stemming from that conviction.

incarcerated or hospitalized some of this time. However, B.P.N. failed to clarify this issue and did not keep DCFS current with regard to this issue. Although B.P.N. was allowed some telephone contact with the children, there was no testimony with regard to how often this occurred, and it appeared that some of the phone calls were problematic and had to be suspended for a period of time.

**Mental Health Assessment:**

The sixth requirement of B.P.N.'s case plan was that he participate in a mental health assessment. The case workers testified that B.P.N. did not complete the mental health portion of his case plan. He was referred to Crowley Behavioral Health but was uncooperative and did not complete the assessment process. He was subsequently scheduled to attend an assessment with Jeremy Broussard, Ph.D., but failed to attend. Although he attended an assessment at Capital Area Human Services, he did not follow through with the process. B.P.N. had been PEC'd (physician's emergency commitment) to Baton Rouge General in April of 2017, but DCFS has never been provided with a Mental Health Diagnosis as a result of that hospitalization.

**Parental Contributions of $20 per month:**

The final requirement of B.P.N.'s case plan was that he make parental contributions of $20 per month. The case workers testified that B.P.N. has never paid his monthly parental contribution of $20.00 as required by the case plan.

Given the above, we find no manifest error in the trial court's determination that B.P.N. failed to substantially comply with his case plan. There is no doubt that the trial court's finding that B.P.N. has not complied with the requirements of the court-approved case plan is more than reasonable given the trial testimony of the case workers, and the numerous DCFS reports filed with the trial court over the course of these proceedings. The evidence indicates that B.P.N. continues to lack

substantial improvement in redressing the problems preventing reunification with his children, despite having greater than two (2) years to work on his case plan.

The trial court stated, and we agree, that:

[I]t's another case of too little, too late, in this Court's mind. These children have been in an adoptive placement. Their needs to have permanency far outweigh a parent's response to a two-year case plan in the form of which it has been responded.

For many reasons, and lack of working a case plan, along with the criminal charges that are pending, this Court thinks it is in the best interest of the child - - children that the termination of the father's parental rights happen. And the Court would, at this time, terminate parental rights and sign a judgment on presentation.

. . .

And for the record, also the Court finds, based on the history, that there is - - that the reasonable chances of substantial compliance with the case plan in the future is unlikely.

Thus, the conditions which led to the children's removal continued to exist at the time of trial.

### *Best Interests of the Child*

A trial court may terminate parental rights only if it finds that termination is in the best interest of the child. *See* La.Ch.Code art. 1037(B). *See State in the Interest Of D.H.L.*, 08-39 (La.App. 3 Cir. 4/30/08), 981 So.2d 906. "This analysis requires a balancing of the child's interests and the parent's interests; however, it has been repeatedly held that the interests of the child are paramount to that of the parent." *State in the Interest of G.E.K.*, 14-682, p. 3 (La.App. 3 Cir. 1/14/15), 155 So.3d 713, 716.

With regards to B.P.N., the trial court found that he initially had very little contact with the department and did not make himself available for most of the case plan. The trial court further found that B.P.N. was noncompliant with substance abuse, noncompliant with mental health, and noncompliant with employment. The

9

trial court further found that B.P.N. did not make parental contributions, and that between August of 2016 and March of 2017, he made no visits. The trial court further found that throughout his time with a case plan, B.P.N. required the case workers to find him, which caused the Court great concern with his responsibility as a parent and his responsibility to work his case plan. The trial court further found that B.P.N. is currently on probation for what appears to be a serious crime pled down for a three-year term suspended and that he had never met with this probation officer prior to the date of the trial when his probation officer found him out in the hallway. The trial court further found that the children's need to have permanency far outweigh B.P.N.'s response to a two-year case plan in the form of which it has been responded. Given the accuracy of the above and the evidence of such in the record, we uphold the trial court's finding that terminating B.P.N.'s parental rights is in the best interest of the children.

IV.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court terminating the parental rights of B.P.N. and certifying T.D.N. and G.N. eligible for adoption, is affirmed.

All costs are assessed to B.P.N.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.